Earl LEE and David Abramson,
Plaintiffs–Appellants,

v.

Richard BURKHART and Patrick
Sullivan, Defendants,

Connecticut General Life Insurance
Company, Defendant–Appellee.

No. 729, Docket 92–7944.

United States Court of Appeals,
Second Circuit.

Argued Dec. 14, 1992.

Decided April 19, 1993.

Gregg D. Adler, Hartford, CT (Angela Melina Rabb, Gould, Livingston, Adler & Pulda, Hartford, CT, of counsel), for plaintiffs-appellants.

Anne F. Bird, Hartford, CT (Henry J. Zaccardi, Pepe & Hazard, Hartford, CT, of counsel), for defendant-appellee.

Before: MESKILL, WINTER and JACOBS, Circuit Judges.

JACOBS, Circuit Judge:

Two participants in a health insurance plan brought this action to obtain reimbursement for medical costs incurred by them and covered by the plan but unpaid by reason of the bankruptcy of the plan's self-insured sponsor. The participants disclaim knowledge that the plan was self-insured by their bankrupt former employer and seek payment from the insurance company that administered the claims. The United States District court for the District of Connecticut (Dorsey, J.) dismissed their complaint and denied leave to amend on the ground that the damages claimed are extracontractual by nature, that extracontractual damages are not recoverable by plan participants under the civil enforcement provisions of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 *et seq.* (1988), and that amendment would therefore be futile. Finding no basis on which these participants can assert these claims against the claims administrator, we affirm.

## BACKGROUND

### A. *Fact Allegations*

For purposes of this appeal, the allegations in the amended and the proposed complaints are deemed to be true.

The Pratt & Whitney Company ("P & W") established a health insurance plan (the "Plan") for its employees and retirees, and contracted with Connecticut General Life Insurance Company ("Connecticut General") to perform various administrative responsibilities for P & W in connection with the Plan. The proposed complaint describes the contract obligations of Connecticut General as follows:

> Under the terms of that contract, [Connecticut General] exercised discretionary authority regarding the processing of claims, determining the amounts owed, providing participants with notices regarding claim denial, admission certification and authorization, and disbursement of benefit checks from a bank account funded by direct payments from [P & W].

The Plan was thus self-funded, which means that P & W insured the participants, who received payment through Connecticut General from an account funded by P & W. The P & W health insurance Plan was an employee benefit plan within the meaning of ERISA, 29 U.S.C. § 1101(a) (1988).

Plaintiff Earl Lee was employed by P & W and its predecessor company since 1962. He suffered a heart attack in January 1989 and qualified for disability retirement later that year. Mr. Lee exercised his right under federal law to continue making premium payments for health insurance coverage under the Plan and he thereby continued his coverage. *See* Consolidated Omnibus Budget Reconciliation Act, 29 U.S.C. § 1161 *et seq.* (1988).

On March 17, 1991 Mr. Lee was admitted to the hospital suffering chest pain. Mr. Lee's wife obtained pre-admission certification and approval for the hospitalization from Connecticut General, which confirmed its certification by letter two days later. Mr. Lee's participation in the Plan was current: he had paid premium by check on March 6 and March 26, 1991.

On April 3, 1991, Connecticut General informed Mr. Lee that no health insurance benefits would be afforded under the Plan after February 28, 1991 by reason of P & W's bankruptcy under Chapter 7 of the Bankruptcy Act [1].

Mr. Lee, who had earlier been hospitalized in January 1991, has incurred altogether $12,600 in medical bills that we must assume are covered by the Plan. Connecticut General has refused to pay these bills on the ground that the self-insured sponsor is now bankrupt and has ceased funding the Plan.

Plaintiff David Abramson, an employee of P & W and its predecessor company for 26 years, is in similar circumstances. Mr. Abramson was diagnosed with a serious illness in December 1990, obtained pre-approval and authorization from Connecticut General for surgery that was performed in January 1991, and has thereby incurred $47,500 in related medical expenses that Connecticut General has refused to pay.

ERISA mandates that each participant in a plan be furnished with a summary plan description that includes a statement as to "the source of financing of the plan". 29 U.S.C. § 1022(b) (1988). To the best of their knowledge and belief, Mr. Lee and Mr. Abramson "were never provided with summary plan descriptions as required by ERISA, 29 U.S.C. § 1021(a) (1988), and were never informed that the Company's Plan was 'self-funded.'"

According to plaintiffs, they believed that Connecticut General was acting as an insurer and not solely as an Administrator of the Plan, and that their belief was reasonable (a) because Connecticut General had sent "all written information about coverage, claim forms, benefit statements and denials, and claim checks"; and (b) "because neither [P & W] nor Connecticut General ever clearly and explicitly explained to the plaintiffs that their health benefits were self-funded rather than insured by [Connecticut General]."

---

**1.** Although neither the first amended complaint nor the Proposed Complaint plead the date of P & W's bankruptcy filing we take judicial notice of the fact that P & W, which had previously filed under Chapter 11 of the Bankruptcy Act, converted its filing to Chapter 7 on March 18, 1991.

The single "Count" in the proposed complaint recites that plaintiffs relied to their "detriment" on the "representations" set forth above, as well as on the pre-approvals and authorizations issued by Connecticut General; and that Connecticut General breached the fiduciary duties prescribed in ERISA Section 404, 29 U.S.C. § 1104 (1988), ERISA Section 101, 29 U.S.C. § 1021 (1988), and ERISA Section 104, 29 U.S.C. § 1024 (1988) by failing to apprise plaintiffs that Connecticut General's only financial obligation was as a mere conduit and that the funding was contingent on P & W and had been later terminated. Plaintiffs predicate their standing to seek damages for the alleged ERISA violations upon ERISA Sections 502(a)(1)(B) and 502(a)(3), 29 U.S.C. §§ 1132(a)(1)(B) and (a)(3) (1988).

## B. *Procedural History*

Plaintiffs filed their original complaint on July 31, 1991 seeking damages as well as equitable and other relief for alleged violations of ERISA; an amended complaint filed less than two weeks later, sought similar relief. The district court dismissed the first amended complaint on the ground that it failed to state a claim, but allowed plaintiffs fifteen days to seek leave to file a second amended complaint. Plaintiffs timely moved to amend the complaint and submitted a proposed amended complaint.[2] The district court concluded that the Proposed Complaint also failed to state a claim, and that leave to file would be futile. The district court ordered entry of a judgment dismissing the action. This appeal followed.

Plaintiffs' first amended complaint alleged that defendants breached fiduciary duties in violation of ERISA Section 404, 29 U.S.C. § 1104 (1988), which imposes the "prudent man" standard upon ERISA fiduciaries. The district court reasoned that (i) Section 404 does not itself create any liability; (ii) that fiduciaries are made liable for breach of their duties under ERISA under Section 409(a), 29 U.S.C. § 1109; (iii) that participants and beneficiaries are authorized by Section 502(a)(2), 29 U.S.C. § 1132(a)(2), to bring an action against a fiduciary who violates Section 409; (iv) but that under *Massachusetts Mutual Life Insurance Co. v. Russell,* 473 U.S. 134, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985), an action under Section 502(a)(2) may be brought only on behalf of a plan itself rather than for the benefit of an individual participant; and (v) that in any event Section 502(a)(2) affords no private right of action for "extracontractual" damages. On that basis, the district court dismissed the amended complaint.

The district court rejected plaintiffs' argument that they were also seeking relief under Section 502(a)(3), 29 U.S.C. 1132(a)(3), because the complaint did not invoke that section. Plaintiffs then sought leave to file an amended complaint with factual allegations substantially identical to those in the first complaint, but invoking ERISA Sections 502(a)(1)(B) and 502(a)(3), 29 U.S.C. § 1132(a)(1)(B) and 29 U.S.C. 1132(a)(3).

The district court denied leave to file the Proposed Complaint on the ground that it too failed to state a claim. The district court again concluded that "a private right of action by a beneficiary or participant for extracontractual damages does not lie against a plan administrator" because the rationale of *Russell,* which arose under Section 502(a)(2), applies as well to Sections 502(a)(1)(B) and 502(a)(3). The district court's ruling was consistent with the majority of the circuits. *See Harsch v. Eisenberg,* 956 F.2d 651 (7th Cir.1992) (consequential damages resulting from delay in payment of benefits not actionable under Section 502(a)(1)(B)), *cert. denied,* ─── U.S. ───, 113 S.Ct. 61, 121 L.Ed.2d 29 (1992); *Reinking v. Philadelphia American Life Ins. Co.,* 910 F.2d 1210 (4th Cir.1991) (damages for emotional distress not recoverable under Section 502(a)(1)(B); *McRae v. Seafarers' Welfare Plan,* 920 F.2d 819 (11th Cir.1991); *Pane v. RCA Corp.,* 868 F.2d 631 (3d Cir.1989); *Drinkwater v. Metropolitan Life Ins. Co.,* 846 F.2d 821 (1st Cir.

---

**2.** The proposed complaint was incorrectly styled "First Amended Complaint." For purposes of this opinion we will refer to that complaint as the "Proposed Complaint".

1988), *cert. denied,* 488 U.S. 909, 109 S.Ct. 261, 102 L.Ed.2d 249 (1988); *Sage v. Automation Inc. Pension Plan and Trust,* 845 F.2d 885 (10th Cir.1988); *Sokol v. Bernstein,* 803 F.2d 532 (9th Cir.1986). *But see Warren v. Society National Bank,* 905 F.2d 975 (6th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 2256, 114 L.Ed.2d 709 (1991) (2–1 decision holding that extracontractual damages are available).

On appeal plaintiffs argue that insofar as they are seeking reimbursement of their health benefits they are not seeking "extracontractual damages." Plaintiffs also argue that extracontractual damages are available (or should be available) under Section 502(a)(1)(B) and Section 502(a)(3). Connecticut General counters that *Russell*'s extracontractual damages rationale applies to all rights of action conferred on plan participants by Section 502 and that, because Connecticut General was not plaintiffs' insurer, any damages that plaintiffs seek are necessarily extracontractual. As will be clear from our analysis, *Russell* does not control the outcome of this case. An analysis of the relevant causes of action under ERISA confirms nonetheless that plaintiffs have failed to state a claim.

### DISCUSSION

In reviewing the district court's denial of leave to file the Proposed Complaint, and the resulting dismissal of the action, we must decide whether, "presuming all factual allegations of the complaint as true, and drawing all reasonable inferences in the plaintiff[s'] favor, the plaintiff[s] could prove any set of facts which would entitle [them] to relief." *Weiss v. Wittcoff,* 966 F.2d 109, 112 (2d Cir.1992) (citations omitted). Accordingly we will examine the various remedies available under ERISA and related federal law to determine whether, given the allegations of the Proposed Complaint, there is any basis upon which plaintiffs could recover.

Section 502 of ERISA authorizes civil suits by beneficiaries or participants for the following relief:

—to obtain relief from an administrator who fails to supply requested information, 29 U.S.C. § 1132(a)(1)(A);

—to "recover benefits due to [the beneficiary or participant] under the terms of his plan, to enforce his rights under the plan, or to clarify his rights to future benefits under the terms of the plan," 29 U.S.C. § 1132(a)(1)(B);

—to obtain "appropriate relief under Section [409]" of ERISA which imposes personal liability on fiduciaries who breach their fiduciary duties, 29 U.S.C. § 1132(a)(2);

—"to enjoin any act or practice which violates any provision of [ERISA] or the terms of the plan or ... to obtain other appropriate equitable relief to redress such violations or to enforce any provisions of [ERISA] or the terms of the plan", 29 U.S.C. § 1132(a)(3);

—to obtain appropriate relief for failure of a plan administrator to provide a statement setting forth information in the administrator's report to the Internal Revenue Service, 29 U.S.C. § 1132(a)(4).

In addition to the statutorily recognized causes of action, we have recognized a federal common law action for a suit by plan participants against a nonfiduciary who participates knowingly in a breach of fiduciary duty. *See Diduck v. Kaszycki & Sons Contractors, Inc.,* 974 F.2d 270 (2d Cir.1992). Finally, we implicitly have recognized a cause of action for equitable or promissory estoppel under ERISA. *See Chambless v. Masters, Mates & Pilots Pension Plan,* 772 F.2d 1032, 1039 (2d Cir.1985), *cert. denied,* 475 U.S. 1012, 106 S.Ct. 1189, 89 L.Ed.2d 304 (1986).

Of these rights of action, some are on their face inapplicable to the claims presented here. Section 502(a)(1)(A) addresses an administrator's refusal to supply information requested by a participant. The original complaint and the Proposed Complaint allege no request for information by either plaintiff and no refusal to respond on the part of anyone. Section 502(a)(4), which furnishes a remedy for a failure to supply individual statements to

individual participants concerning their pension plans is also not implicated here.

### Section 502(a)(2)

■ Section 502(a)(2) of ERISA permits a participant or beneficiary to sue a "fiduciary with respect to a plan" for breach of fiduciary duty in violation of ERISA Section 409. The Supreme Court's decision in *Russell* clearly precludes any claim by the plaintiffs under Section 502(a)(2). In *Russell*, a beneficiary of a plan sued the plan administrator for damages arising out of the administrator's delay in processing the plaintiff's claims. The Supreme Court held that the fiduciary duties imposed by Section 409 run to a plan and not to individual beneficiaries. 473 U.S. at 140–44, 105 S.Ct. at 3089–91. The court also held that Section 409 did not authorize the award of "extracontractual" damages to a beneficiary[3]. *Id.* at 144, 105 S.Ct. at 3091. *Russell* therefore bars plaintiffs from suing under Section 502(a)(2) because plaintiffs are seeking damages on their own behalf, not on behalf of the Plan.

### Section 502(a)(1)(B)

The Proposed Complaint alleges that Section 502(a)(1)(B) authorizes claims for reimbursement against Connecticut General. Under that Section, a participant can bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan," or for clarification of rights to future benefits. 29 U.S.C. § 1132(a)(1)(B). While plaintiffs are seeking to recover the value of their benefits (among other things), Connecticut General's position is that such a claim is not for benefits "under the terms of the plan", because one condition to payment under the Plan is that the benefits be funded by P & W, a condition that is no longer being fulfilled. A second potential impediment to plaintiffs' recovery under this provision is that, under *Russell*, participants cannot recover "extracontractual" damages under this section. *See Russell*, 473 U.S. at 144, 105 S.Ct. at 3091 ("Signifi-

cantly, the statutory provision explicitly authorizing a beneficiary to bring an action to enforce his rights under the plan ... says nothing about the recovery of extracontractual damages."). A third potential impediment is that "ERISA permits suits to recover benefits only against the Plan as an entity." *Gelardi v. Pertec Computer Corp.*, 761 F.2d 1323 (9th Cir.1985)).

The pleadings rejected in the district court, however, allege detrimental reliance, and thereby endeavor to plead that the failure of P & W and Connecticut General to apprise plaintiffs that their health insurance was conditioned on P & W's funding gives rise to estoppel. If indeed Connecticut General had a duty to tell plaintiffs that the coverage was conditional, and plaintiffs' loss of coverage was caused by its failure to do so, Connecticut General might be estopped from asserting by way of defense that the payments sought in this suit are not benefits, that they are not contractual, or that they are not owed by the Plan.

■ We have recognized that under "extraordinary circumstances" principles of estoppel can apply in ERISA cases. *See Chambless v. Masters, Mates & Pilots Pension Plan*, 772 F.2d 1032, 1039 (2d Cir. 1985), *cert. denied*, 475 U.S. 1016, 106 S.Ct. 1189, 89 L.Ed.2d 304 (1986). *See also Gridley v. Cleveland Pneumatic Co.*, 924 F.2d 1310, 1318–19 (3d Cir.) (claim for equitable estoppel available under § 502(a)(3) in "extraordinary circumstances"), *cert. denied*, ⸺ U.S. ⸺, 111 S.Ct. 2856, 115 L.Ed.2d 1023 (1991). The Proposed Complaint does not, however, allege facts sufficient to estop Connecticut General's assertion of the defenses it has raised.

■ The elements of estoppel are (1) material representation, (2) reliance and (3) damage. *Gridley*, 924 F.2d at 1319. Plaintiffs in this case have failed to meet the first element.

---

**3.** The Supreme Court explicitly left open the question of whether extracontractual damages are available to a beneficiary under Sections 502(a)(1), 29 U.S.C. § 1132(a)(1), and 502(a)(3), 29 U.S.C. § 1132(a)(3). *See Russell*, 473 U.S. at 144, 105 S.Ct. at 3091.

■ The Proposed Complaint does not allege that Connecticut General affirmatively misrepresented that it was the Plan's insurer;[4] rather, plaintiffs allege that Connecticut General never "clearly and explicitly explained to the plaintiffs that their health benefits were self-funded rather than insured by [Connecticut General]." Plaintiffs also allege that because all of the communications that they received regarding the Plan were from Connecticut General, they believed that Connecticut General was the insurer of the Plan.

Taken in the context of the ERISA regulatory arrangements, these facts are insufficient to support a claim for equitable estoppel.

■ Sections 101 and 104 of ERISA require that the "administrator" of a plan furnish each participant with a summary of the plan containing the "source of financing of the plan and the identity of the organization through which benefits are provided." 29 U.S.C. §§ 1021, 1024 (1988). Thus, ERISA undoubtedly requires that participants be told who has the financial obligation to fund the plans. But that obligation is placed on the person designated under ERISA as the "administrator" of the plan, not on every fiduciary. ERISA defines an "administrator" as (1) "the person specifically so designated by the terms of the instrument under which the plan is operated; (ii) if an administrator is not so designated, the plan sponsor." 29 U.S.C. § 1002(16)(A)(i). Thus, unless the plan sponsor, in this case P & W, designates another party to provide the disclosure mandated by ERISA, the duty to make such disclosure is on the plan sponsor. *See Davis v. Liberty Mutual Insurance Co.,* 871 F.2d 1134, 1138 (D.C.Cir.1989).

Plaintiffs do not allege that P & W designated Connecticut General as the "administrator" of the Plan in that sense or for that purpose. Nowhere do they allege that P & W's disclosure duties were delegated to Connecticut General. The statutory duty to disclose that the Plan was self-funded thus remained with P & W. Connecticut General was therefore entitled to perform the functions described in the complaint without ever notifying Plan participants that the Plan was self-funded, and without inquiring as to whether P & W had made such a disclosure—unless Connecticut General had actual knowledge of P & W's failure to disclose.[5]

■ Section 405 of ERISA, 29 U.S.C. § 1105, imposes on each fiduciary a liability for the breach of duty by a co-fiduciary if the first "has knowledge of a breach by such other fiduciary ... (3) unless he makes reasonable efforts to remedy the breach." We have recognized that under certain circumstances even a non-fiduciary can be responsible to a plan for knowing *participation* in a breach of fiduciary duty. *Diduck v. Kaszycki & Sons Contractors, Inc.,* 974 F.2d 270 (2d Cir.1992)[6]; *Lowen v. Tower Asset Management, Inc.,* 829 F.2d 1209 (2d Cir.1987). There is some dispute between the parties as to whether Connecticut General was in fact a fiduciary, but that question need not be resolved in this case. Under both the standard of ERISA Section 1105(a)(3) for fiduciaries and the standard set out in *Diduck* for non-

4. In their Reply Brief, plaintiffs allege for the first time that Connecticut General represented that it was the insurer. We decline to consider this allegation that was never made to the district court despite three opportunities to do so. Moreover, the conclusory nature of this allegation of misrepresentation fails to comply with Fed.R.Civ.P. 9(b).

5. Some courts have held that under certain circumstances a party not designated as an administrator may be liable for failing to furnish a plan description. *See Rosen v. TRW, Inc.,* 979 F.2d 191 (11th Cir.1992); *Law v. Ernst & Young,* 956 F.2d 364, 373–4 (1st Cir.1991). We disagree. "Respect for our proper role requires that we

decline ... to substitute our notions of fairness for the duties which Congress has specifically articulated by imposing liability on the 'administrator'." *Davis,* 871 F.2d at 1138, n. 5. *See McKinsey v. Sentry Insurance,* 986 F.2d 401 (10th Cir.1993) (disagreeing with *Law v. Ernst & Young* ).

6. As the lower court's opinion in *Diduck* makes clear, the recovery in that action was for the plan. *See Diduck v. Kaszycki & Sons Contractors, Inc.,* 737 F.Supp. 792, 797 (S.D.N.Y.1990) ("[O]ne of the few things that [the parties] agree on is that any recovery from this action will go to the Funds and not to the plaintiff.").

fiduciaries, plaintiffs have failed to state a claim.

■ . To be sure, P & W's alleged failure to provide participants with a Plan description violated a statutory obligation that can be fairly characterized as a fiduciary duty. If, therefore, Connecticut General were a fiduciary and had actual knowledge that P & W failed to furnish participants with the Plan description, and took no step to correct that breach of duty, Connecticut General might itself have breached a fiduciary obligation, and that breach, together with the detrimental reliance alleged in the pleadings, would estop Connecticut General from asserting the lack of funding from P & W as a defense to payment of these claims. Connecticut General would then have placed itself in the unfortunate position of any insurer that issues a policy that omits to state a condition.[7] However, neither the Proposed Complaint nor its predecessors alleges that Connecticut General knew about P & W's failure to distribute copies of the Plan description to the plaintiffs. In their reply brief, plaintiffs assert that the Proposed Complaint does make this allegation. But the paragraphs to which plaintiffs cite simply do not support such a reading. Neither does our review of the complaint disclose any allegation that can be fairly read to advance such a claim.

### *Section 502(a)(3)*

■ The Proposed Complaint alleges that Connecticut General is liable under Section 502(a)(3) of ERISA which permits a beneficiary or participant to sue to obtain "appropriate equitable relief" to remedy violations of ERISA. The complaint does not however seek equitable relief; rather, it asks for damages. Money damages are generally unavailable under this section. *See Alfarone v. Bernie Wolff Construction Corp.*, 788 F.2d 76 (2d Cir.), *cert. denied*, 479 U.S. 915, 107 S.Ct. 316, 93 L.Ed.2d 289 (1986). The plain language of the statute does not provide for monetary relief and a review of the legislative history confirms that Congress did not contemplate that this phrase would include an award of money damages. *See* S.Rep. No. 383, 93rd Cong., 2d Sess. 105–6 *reprinted in* 1974 U.S.Code Cong. & Admin.News 4639, 4890, 4989 ("For example, injunctions may be granted ... a constructive trust may be imposed ... [and] a fiduciary may be removed"). *See also Novak v. Andersen Corp.*, 962 F.2d 757 (8th Cir.1992) (reviewing legislative history of ERISA and concluding that Section 502(a)(3) does not authorize award of money damages).

### CONCLUSION

ERISA contains "six carefully integrated civil enforcement provisions" which are part of "ERISA's interlocking, interrelated, interdependent enforcement scheme which is in turn part of a comprehensive and reticulated statute." *Russell*, 473 U.S. at 146, 105 S.Ct. at 3092. In addition, the federal courts have developed a federal common law of ERISA based on principles developed in evolution of the law of trusts. *See Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 110, 109 S.Ct. 948, 954, 103 L.Ed.2d 80 (1989). Within those parameters, we have searched for a sound basis on which to afford relief. Distasteful as it is to conclude that people who prudently secured insurance may be left nevertheless exposed to the risk, this suit does

---

**7.** Some courts have held that Section 405(a) furnishes an independent basis for an individual to recover against a fiduciary who knowingly participates in a co-fiduciary's breach of duty. *See Willett v. Blue Cross and Blue Shield of Alabama*, 953 F.2d 1335 (11th Cir.1992). In *Willett*, the plaintiffs were insured by Blue Cross and their premiums were paid by their employer. As a result of the employer's failure to pay the premiums plaintiffs lost their insurance coverage. The plaintiffs sued Blue Cross alleging that Blue Cross breached a duty to inform them that the employer had failed to pay the insurance premium. The court held that while the duty to inform plaintiffs was the employer's, Blue Cross could be liable if it failed to inform the plaintiffs despite its knowledge of the employer's wrongful failure to disclose. The *Willett* court did not address the question of whether the *Russell* holding that ERISA Section 409 only allowed recovery *by* the plan itself would apply to Section 405 as well. We are inclined to think that *Russell* would preclude the plaintiffs' claim in *Willett*, but need not reach that issue for the reasons discussed above.

not open an avenue to recovery against Connecticut General. Accordingly, the judgment of the district court dismissing the complaint is affirmed.