Pond v. Travelers Insurance          CV-97-42-B      6/22/98

**UNITED STATES DISTRICT COURT**
                  **FOR THE DISTRICT OF NEW HAMPSHIRE**


**Nathan Pond**

          **v.**                                        C-97-42-B

**The Travelers Insurance Company**


                       **MEMORANDUM AND ORDER**


     Nathan Pond brought this suit against The Travelers
Insurance Company ("Travelers") seeking reimbursement for
expenses he incurred in a hip-replacement operation.  Pond
alleges that Travelers breached the fiduciary duty it owed him
by failing to pay for the operation.  Accordingly, he claims that
Travelers is liable for his medical bills pursuant to the
Employee Retirement Income Security Act ("ERISA"), 29 U.S.C.A. §
1001 et seq. (West 1985 & Supp. 1998).  Pond also contends that
Travelers is liable for statutory damages, pursuant to 29
U.S.C.A. § 1132(c) (West 1985 & Supp. 1998), for failure to
provide him with requested information concerning his employee
benefit plan.  Travelers responds by contending that Pond has
failed to state a cognizable claim under ERISA.  The parties have
filed cross-motions for summary judgment.

## I.   BACKGROUND

Pond was employed as a pilot by Precision Valley Aviation, Inc. ("Precision"), a subsidiary of Northeast Air Group, Inc., from 1972 until Precision filed for bankruptcy and ceased its operations in May 1994.  Through December 31, 1993, Precision maintained a self-funded employee benefit plan (the "Plan")[1] of which it served as both the "Plan Sponsor" and "Plan Administrator."  Under the Plan, Precision contracted with Travelers to provide claims administration services.  Pursuant to the Administrative Services Agreement ("ASA") executed by Precision and Travelers, Travelers was designated as the "appropriate named fiduciary . . . for the purpose of reviewing and making decisions on claim denials."  Travelers also was authorized to pay claims made to the Plan by issuing checks payable from a bank account funded by Precision.  Both the ASA and the Summary Plan Description ("SPD"), a document made available to all plan participants, expressly provided that Precision, and not Travelers, was responsible for funding the payment of all claims.

The Plan terminated on December 31, 1993.  After that date, Precision contracted with New York Life Insurance Company ("New York Life") to provide insurance coverage to employees via a plan

_____

[1]   There is no dispute that the Plan qualifies as an "employee welfare benefit plan" under ERISA, 29 U.S.C.A. § 1003 (West 1995 & Supp. 1998).

2

under which benefits were funded by New York Life and not by Precision. Although the original Plan formally terminated as of that date, it specified that Travelers would continue to process claims for an additional twelve months for any claimant who became disabled before the Plan terminated and who remained disbled until the charges giving rise to the claim were incurred.

Pond underwent hip-replacement surgery on his left hip on November 11, 1993. Pursuant to the terms of the Plan, Travelers both pre-approved the procedure and issued a check from Precision's account to cover Pond's medical bills. Shortly after that operation, Pond scheduled a similar procedure on his right hip to take place in early January. Recognizing that the Plan would terminate prior to the operation, and apparently unaware of the Plan's continuing-coverage provision, Pond did not seek pre-approval from Travelers. Rather, Pond sought and obtained pre-approval from New York Life. On January 3, 1994, Pond had his right hip replaced, resulting in bills totaling $33,356.60.

Pond submitted a claim for his medical expenses to New York Life. Sometime in March or April 1994, however, New York Life determined that Pond was ineligible for coverage under the New York Life plan because Pond had not been working full time for Precision at any point since the plan's inception. Pond's New

3

York Life file contains a notation dated April 29, 1994, stating that New York Life forwarded Pond's claim information to Travelers after determining that the claim could not be covered under the New York Life plan. A May 11, 1994 notation in Pond's Travelers' file states that Pond spoke by telephone with a Travelers representative, informing her that New York Life was not paying for the operation and that Travelers should. There is no further evidence in the record indicating whether New York Life ever sent Pond's claim information to Travelers or whether Travelers ever received this information. Nor does the record contain any indication as to whether Travelers ever responded to or followed up on Pond's telephone call.

Precision filed for bankruptcy in late May 1994. At some point, either before or after Precision's bankruptcy, Pond spoke about his claim with Steve Grill, a vice president of accounting at Precision. Grill informed Pond that because Precision was self-insured under the Travelers plan, he should send his claim information directly to Precision. Precision, however, never paid Pond's bills. In September 1994, Pond authorized his union to pursue a claim on his behalf against Precision in bankruptcy court, seeking not only payment for the medical claim, but also payment for accrued but unused vacation time.

Apparently recognizing that Pond's chances for recovery in bankruptcy court were slim, a union representative sent Travelers a letter in October 1994, requesting a copy of the ASA as well as a review of Pond's claim for coverage of the January 3, 1994 hip-replacement operation. Travelers never responded to this letter. Two years later, in October 1996, an attorney for Pond sent letters to both Travelers and New York Life demanding payment of his claims and requesting plan information. Neither party responded to his demand and Pond brought this suit in January 1997.[2]

Pond now moves for summary judgment against Travelers on two grounds. First, he contends that Travelers breached the fiduciary duty it owed to him by failing to pay his claim. Second, he contends that Travelers's failure to provide him with plan information and documents upon his request gives rise to a claim for statutory damages pursuant to 29 U.S.C.A. § 1132(c). Travelers has also filed a motion for summary judgment, alleging, inter alia, that Pond has failed to state a cognizable claim under ERISA. For the reasons that follow, I deny Pond's motion

---

[2]  Pond brought suit against both Travelers and New York Life. Pond and New York Life, however, have settled their dispute. Accordingly, by a stipulation of dismissal filed with the court on February 17, 1998, Pond's claims against New York Life were dismissed with prejudice, leaving Travelers as the only remaining defendant in this suit.

and grant Travelers'.

## II. SUMMARY JUDGMENT

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see Lehman v. Prudential Ins. Co. of Am., 74 F.3d 323, 327 (1st Cir. 1996). A genuine issue is one "that properly can be resolved only by a finder of fact because [it] . . . may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). A material fact is one that affects the outcome of the suit. Id. at 248. In ruling on a motion for summary judgment, the court construes the evidence in the light most favorable to the non-movant and determines whether the moving party is entitled to judgment as a matter of law. Oliver v. Digital Equip. Corp., 846 F.2d 103, 105 (1st Cir. 1988). I apply this standard in ruling on both parties' motions for summary judgment.

## III. __ANALYSIS__

### A. __Pond's Claim for Benefits__

Pond bases his claim for benefits on 29 U.S.C.A. § 1132(a)(1)(B), which authorizes a plan participant or beneficiary to sue "to recover benefits due under the terms of his plan . . . ."[3] Pond argues that Travelers must pay his medical bills because: (1) Precision became obligated under the Plan to pay his bills; (2) Precision is bankrupt; (3) Travelers served as a fiduciary with respect to issues of claims administration; and (4) because it is a fiduciary, Travelers is obligated to pay any benefits due Pond under the Plan that Precision failed to pay.

The fatal flaw in Pond's argument is that it assumes that a fiduciary is always liable for any benefits due under the Plan. Travelers' duties under the Plan are limited to claims processing and the making of eligibility determinations. This limitation is plainly noted in the Plan's Summary Description which states that "[a]ll benefits becoming due under the Plan are funded directly by Precision . . . The Travelers company does not insure the benefits described in this booklet." Thus, even if Pond is entitled to benefits under the Plan and even if Travelers served

_____

[3] Section 1132(a)(1)(B) also authorizes a participant or beneficiary to sue to "enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." However, Pond does not rely on these provisions.

as a fiduciary for purposes of claims processing and eligibility determinations, it cannot be held liable for any unpaid benefits without some evidence that it breached a fiduciary duty to Pond and that the breach caused Pond to lose his benefits.[4]

Viewing Pond's complaint generously, it might be read to claim that Travelers is liable for Pond's medical bills because it breached its duty to timely process his claim. This argument fails for at least two reasons. First, assuming without deciding that Travelers owed Pond a fiduciary duty to process his claim expeditiously, the record contains no evidence to support a finding that any unreasonable delay by Travelers in processing the claim actually caused Pond to lose his benefits. Accepting Pond's evidence as true, the earliest that Travelers could have learned of his claim was on or about April 29, 1994, when New York Life allegedly sent Travelers information concerning the claim. Since it is undisputed that Precision filed for bankruptcy protection and became unable to pay any future benefits less than 30 days later, Pond cannot prevail on a breach of fiduciary claim against Travelers unless it can demonstrate that a delay of less than 30 days in processing the claim was unreasonable. Any delay in excess of 30 days, while perhaps

_____

[4] In some circumstances, a fiduciary may be liable for a breach of duty by a co-fiduciary, 29 U.S.C. § 1105. However, Pond does not base his claim on this section of ERISA.

8

unreasonable and in breach of Travelers' fiduciary duty, cannot support Pond's claim because that delay did not contribute to the loss of his benefits.  Further, because the record contains no evidence to support a finding that any delay of less than 30 days was unreasonable, Pond cannot prevail on his claim for benefits against Travelers.[5]

Pond's claim also fails because he cannot obtain the relief he seeks from Travelers under ERISA.  29 U.S.C.A. § 1132(a)(1)(B), the section of ERISA Pond explicitly invokes, may only be used to obtain unpaid benefits from the plan itself.  See Hall v. LHACO, Inc., 140 F.3d 1190, 1196 (8th Cir. 1998); Lee v. Burkhart, 991 F.2d 1004, 1009, 1011 (2d Cir. 1993).  Further, although a plan participant or beneficiary may sometimes sue a fiduciary pursuant to 29 U.S.C.A. § 1132(a)(3), see Variety Corp. v. Howe, 116 S. Ct. 1065, 1077-79 (1996), the relief available to Pond under this section is limited to "other appropriate equitable relief."[6]  Any claim based on this section must be limited

---

[5] Indeed, the Summary Plan Description expressly provides that a claimant cannot treat a claim to which Travelers neglects to respond as denied until 90 days after Travelers receives the claim information.  Only then, under the terms of the Plan, may the claimant appeal the claim as denied.

[6] Section 1132(a)(2) also authorizes a plan participant or beneficiary to sue to "enjoin any act or practice which violates any provision of this subchapter."  Because this section allows recovery only on behalf of the plan, however, it is of no help to Pond in his current predicament.

to those remedies "traditionally viewed as 'equitable,'" such as an injunction, declaratory relief, or restitution.  See Mertens v. Hewitt Assoc., 508 U.S. 248, 255 (1993); Drinkwater v. Metropolitan Life Ins. Co., 846 F.2d 821, 825 (1st Cir.), cert. denied 488 U.S. 909 (1988).  Because Pond neither seeks nor would be benefitted by any of these remedies, he cannot base his claim on section 1132(a)(3).[7]  See Armstrong v. Jefferson Smurfit Corp., 30 F.3d 11, 13 (1st Cir. 1994); Lee, 991 F.2d at 1011.  Consequently, Pond has failed to state a cognizable claim for benefits under ERISA.

## B.    Pond's Claim for Statutory Penalties

In his October 1996 letter to Travelers, Pond's attorney

---

[7]   An injunction requiring Travelers to process and consider Pond's claim for benefits would not remedy his harm as Travelers is no longer affiliated with any benefit plan maintained by Precision and Precision, the party ultimately responsible for funding the payment of Pond's benefits, is bankrupt and defunct. Additionally, Pond cannot maintain an action for restitution against Travelers without showing that Travelers was somehow enriched at his expense.  See Texaco Puerto Rico, Inc. v. Department of Consumer Affairs, 60 F.3d 867, 875 (1st Cir. 1995)("[R]estitution is founded on the concept of unjust enrichment . . . ."); Kwatcher v. Massachusetts Serv. Employees Pension Fund, 879 F.2d 957, 967 (1st Cir. 1989) (Restitution allowed as equitable remedy "when one party 'has been unjustly enriched at the expense of another.'") (quoting Restatement of Restitution § 1 (1937)).  Because Travelers was never responsible for funding payment of Pond's benefits, however, it did not profit from its failure to process his claim.  Rather, the only party that profited from Travelers' conduct was Precision, the party ultimately responsible for funding the payment of Pond's benefits.

10

requested that Travelers provide a copy of the ASA and other plan documents.  Travelers never responded to this letter and, consequently, did not provide the requested information.  Pond now claims that in failing to provide the requested documents, Travelers violated 29 U.S.C.A. § 1132(c), which provides in relevant part that

> [a]ny administrator who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary . . . by mailing the material requested . . . within 30 days after such request may in the court's discretion be personally liable to [the party requesting the information] in the amount of up to $100 a day . . . .

A claimant may recover under this provision against either "the [party] specifically [designated as the administrator] by the terms of the instrument under which the plan is operated," 29 U.S.C.A. § 1002(16)(A)(i) (West 1985 & Supp. 1998), or a party that has, as a matter of practice, "acted as the plan administrator in respect to the dissemination of information concerning plan benefits," Law v. Ernst & Young, 956 F.2d 364, 373 (1st Cir. 1992).

In this case, the Plan documents expressly name Precision as the Plan Administrator and the party to which participants should direct all requests for information concerning the Plan.  Additionally, there is no evidence in the record that could support a finding that Travelers ever acted as the party responsible for

11

disseminating information concerning plan benefits. <u>See</u> <u>Law</u>, 958 F.2d at 373. I find that no reasonable trier of fact could conclude, based on the evidence in the record, that Travelers was either the expressly-named or the de facto plan administrator with respect to disseminating plan information. Consequently, Travelers is entitled to summary judgment on this claim as well.

## IV. <u>CONCLUSION</u>

For the foregoing reasons, Travelers' motion for summary judgment (document no. 12) is granted and Pond's cross-motion for summary judgment (document no. 15) is denied.

SO ORDERED.

_____
Paul Barbadoro
Chief Judge

June 22, 1998

cc: Michael Sheehan, Esq.
    Edward O'Leary, Esq.
    Roy S. McCandless, Esq.