**Linda DEL GRECO, individually and on behalf of all others similarly situated, Plaintiff,**

v.

**CVS CORPORATION d/b/a Pharmacare Management Services, Defendant.**

**Linda Del Greco, individually and on behalf of all others similarly situated, Plaintiff,**

v.

**Medco Health Solutions, Inc. (f/k/a Merck–Medco Managed Care, L.L.C.), Defendant.**

**Nos. 03CIV1262CM, 03CIV4374CM.**

United States District Court,
S.D. New York.

Jan. 21, 2005.

---

William Robert Weinstein, Wechsler Harwood LLP, New York City, for Plaintiff.

Gina Desantis Wodarski, Paul E. Dwyer, Edwards & Angell, LLP, Providence, RI, Mark S. Landman, Landman, Corsi, Ballaine & Ford, P.C., New York City, for Defendant.

DECISION AND ORDER GRANTING PLAINTIFF'S MOTIONS FOR RECONSIDERATION AND, ON RECONSIDERATION, DISMISSING THE ONE REMAINING CLAIM IN *MEDCO*

MCMAHON, District Judge.

These are denial of benefits cases, governed by the Employee Retirement Income Security Act, 29 U.S.C. § 1001 *et seq.* ("ERISA").

Plaintiff Linda Del Greco is an ERISA beneficiary. Defendants, Medco Health Solutions, Inc. ("Medco") and CVS/Pharmacare Management Services ("Pharmacare"), are employee benefits "claims administrators" alleged to have made decisions on behalf of the employer, North Shore Long Island Jewish Health System ("NSLIJ"), which deprived plaintiff of the benefit of paying a "generic" co-payment for the drug tamoxifen citrate, marketed by Barr Laboratories. In addition to denial of benefits claims, plaintiff made equitable claims in both cases that defendants had breached their fiduciary duty by categorizing Barr's tamoxifen as a "brand" drug, and seeking injunctive and declaratory relief to the effect that Barr's tamoxifen is "legally" a "generic" drug which should be treated as such by defendants.

Plaintiff asks that the court reconsider (1) its December 5, 2003 decision ("*Medco* ") dismissing the denial of benefits claim and the equitable claims to the extent that plaintiff sought money damages against Medco, and (2) its September 22, 2004 decision ("*CVS* ") dismissing all claims against defendant Pharmacare.

Specifically, plaintiff requests reconsideration of: (1) the portions of *Medco* finding that Medco was not a proper defen-

dant and dismissing the denial of benefits claims, on the basis that Medco actually made benefits determinations and can be sued as an administrator, (Transcript of Conference, *Del Greco v. Medco Health Solutions, Inc.*, No. 03 Civ. 4374, December 5, 2003 ("Transcript")[1] at pp. 16–23); (2) the portion of *CVS* dismissing all equitable claims against Pharmacare as duplicative of denial of benefits claims, on the basis that the decision is inconsistent with *Medco* and also that the denial of benefits claims are not duplicative (Plaintiff's Mem. of Law in Supp. for Mot. for Reconsideration, dated Oct. 12, 2004 ("Pl.Mem.") at 17–19); (3) the portion of *CVS* dismissing the denial of benefits claims for failure to exhaust, on the bases that the decision is inconsistent with *Medco* and that exhaustion would be futile (Pl. Mem. at 11–16); (4) the portion of *CVS* finding that Pharmacare's determination to treat Barr's tamoxifen as a brand drug was not arbitrary and capricious, on the grounds that Pharmacare's decision should have been reviewed *de novo* because the "controlling issue" is whether Barr's tamoxifen is "legally" a generic drug and because the determination was not supported by substantial evidence (Pl. Mem. at 19–23); (5) portions of the *CVS* decision that imply or state that Barr's tamoxifen is a "brand" drug; and (6) the plaintiff argues that the court prevented discovery that had been agreed to by the parties in *CVS,* causing manifest injustice (Pl. Mem. at 23).

After reviewing the decisions and the parties' subsequent submissions, I:(1) decline to reverse the decision dismissing the claims against Medco for failure to sue the proper party because it is not inconsistent with *CVS;* (2) modify the decision in *Medco* to dismiss all of the equitable claims because they merely duplicate the denial

---

1. Plaintiff's Motion for Reconsideration of *Medco* was made orally at the Dec. 5, 2003 conference, at which the decision in that case was rendered, also orally.

of benefits claims; (3) decline to reverse the decision dismissing the claims against Pharmacare for failure to exhaust because it is not inconsistent with *Medco;* (4) decline to reverse the decision that Pharmacare's characterization of Barr's tamoxifen was not arbitrary and capricious, because it was reviewed under the proper standard; (5) decline to change any references to Barr's tamoxifen in the *CVS* decision because that decision did not state that Barr's tamoxifen was a "brand" drug, only that Pharmacare was not arbitrary and capricious in treating it as such; and (6) decline to withdraw the decision on the *CVS* motion to permit discovery because none is needed in order to decide the motion.

In sum, upon reconsideration, the only alteration to my earlier decisions is the dismissal of the equitable claims against Medco. As those were the only remaining claims in *Medco,* both cases are now dismissed and should be closed.

**Standard for Reconsideration**

To prevail on a motion for reconsideration, the moving party must demonstrate "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Doe v. New York City Dept. of Soc. Servs.,* 709 F.2d 782, 789 (2d Cir.1983). The court's review "is narrow and applies only to already-considered issues; new arguments and issues are not to be considered." *Morales v. Quintiles Transnational Corp.,* 25 F.Supp.2d 369, 372 (S.D.N.Y.1998). A motion for reconsideration "is not a substitute for appeal and 'may be granted only where the Court has overlooked matters or controlling decisions which might have materially influenced the earlier decision.'" *See id.* (citations omitted). Thus, motions for reconsideration are denied, "unless the moving party can point to controlling decisions or data that the court

overlooked." *Shrader v. CSX Transport, Inc.,* 70 F.3d 255, 257 (2d Cir.1995).

**Analysis**

*1. Proper Party*

■ In *Medco,* I dismissed plaintiff's denial of benefits claims on the basis that the plaintiff sued the wrong party. (Transcript p. 8). The benefits plan at issue in that case named a plan administrator, North Shore Long Island Jewish Hospital—not Medco. (Tr. p. 9:4–6.) While I recognize that there is some disagreement among courts in this circuit and other circuits, one line of authority holds that only the named plan administrator, the plan itself or its trustees may be sued for denial of benefits. *Chapman v. ChoiceCare Long Island Term Disability Plan,* 288 F.3d 506, 509 (2d Cir.2002); *Crocco v. Xerox Corp.,* 137 F.3d 105 (2d Cir.1998); *Lee v. Burkhart,* 991 F.2d 1004 (2d Cir.1993); *Leonelli v. Pennwalt Corp.,* 887 F.2d 1195, 1199 (2d Cir.1989); *see also Gelardi v. Pertec Computer Corp.,* 761 F.2d 1323, 1324 (9th Cir.1985); *but see American Medical Assoc. v. United Healthcare Corp.,* No. 00 Civ. 2800(LMM), 2002 WL 31413668, *6 (S.D.N.Y.2002); *Sheehan v. Met. Life Ins. Co.,* No. 01 Civ. 9182(CSH), 2002 WL 1424592 (S.D.N.Y. June 28, 2002); *see also Nozar v. John Hancock Mut. Life Ins. Co.,* No. 89 Civ. 5496, 1990 WL 103216 (N.D.Ill. July 19, 1990). An entity that provides services to a plan does not become a *de facto* plan administrator liable under ERISA. *Crocco,* 137 F.3d at 107, *Lee,* 991 F.2d at 1010.

■ Since Medco was not the named plan administrator, I held that Medco could not be sued for denial of benefits. Plaintiff has drawn my attention to no intervening law or overlooked facts which would have changed this result. Therefore, I decline to revisit that conclusion.

In *CVS,* I did not reach the issue of whether Pharmacare was a proper party because I dismissed the whole case on other grounds. (*CVS* p. 16). Therefore, the decisions are not inconsistent on this issue.

### 2. Breach of Fiduciary Duty and Other Equitable Claims

In *Medco,* I held that plaintiff's equitable claims were duplicative of her denial of benefits claims only to the extent that she sought money damages. (Tr. pp. 9–15). In *CVS,* I dismissed all of plaintiff's equitable claims against Pharmacare on the basis that they were duplicative of her denial of benefits claims. (*CVS* p. 21). I noted in *CVS,* however, that I had not dismissed the equitable claims in *Medco* because plaintiff had claimed they were *more* than traditional denial of benefits claims. (*CVS* at 21). After additional discovery, I had become convinced that the equitable claims in *Medco* were also duplicative. (*Id.*)

I find that all the equitable claims in both cases are duplicative of the denial of benefits claims and should be dismissed as such. *Medco* is therefore modified to reflect this.

### 3. Failure to Exhaust

In *Medco,* I found that the defendant was involved in prior litigation in which it had assumed a position contrary to plaintiff's, and that, as a result, exhaustion of administrative remedies would be futile in that case. (Tr. at pp. 6–8.) Therefore, I did not dismiss plaintiff's claims on that basis. In *CVS,* however, plaintiff presented no evidence that Pharmacare was involved in existing litigation that would render exhaustion futile. Plaintiff's Memorandum claims that I decided this issue incorrectly because "the exact same legal position asserted by Medco unwaveringly has been asserted" by Pharmacare in *CVS.* (Pl. Mem. at 16). To

support this proposition, plaintiff cites the Complaint (¶¶ 26, 39–40). However those paragraphs of the Complaint do not make any allegation that Pharmacare or CVS had inconsistent positions in existing litigation that would render exhaustion futile. Those paragraphs merely argue that plaintiff had phone conversations with people at NSLIJ who indicated that the decision to treat Barr's tamoxifen as a "brand" drug was within Pharmacare's discretion, (¶ 26), and that NSLIJ had received numerous phone calls on this issue (¶¶ 39–40).

Plaintiff never argued during litigation that defendant had inconsistent legal positions in *CVS;* this is a *new* argument advanced only in the Motion for Reconsideration. The new argument can provide no basis for review of my prior decision.

### 4. Review of Pharmacare's Classification of Barr's Tamoxifen as a Brand Drug

In *CVS,* I held that Pharmacare's decision to classify Barr's tamoxifen as a "brand" drug should be reviewed for clear error, since Pharmacare was given discretionary authority to make benefits decisions under the plan at issue. (*CVS* at 22). Plaintiff now argues that the "real" issue is whether Barr's tamoxifen is "legally" a generic drug, and that Pharmacare's decision, therefore, should have been reviewed *de novo.* (Pl. Mem. at 19–20.) Plaintiff also argues that Pharmacare's decision was not supported by substantial evidence. (Pl. Mem. at 20–23.) Plaintiff has submitted vast amounts of information purportedly supporting the contention that Barr's tamoxifen is "legally" a generic drug, necessitating *de novo* review of Pharmacare's classification. (Pl. Mem. at 2–11; Letter from W.R. Weinstein to Hon. C. McMahon, dated Oct. 13, 2004 ("Oct. 13 Letter"); Letter from W.R. Weinstein to Hon. C.

McMahon, dated Oct. 26, 2004 ("Oct. 26 Letter").)

Plaintiff's arguments are misplaced. Pharmacare's determination was reviewed for clear error because Pharmacare exercised discretion in making its classification of Barr's tamoxifen—as conceded by plaintiff. *See Firestone Tire and Rubber Co. v. Bruch,* 489 U.S. 101, 109 S.Ct. 948, 954, 103 L.Ed.2d 80 (1989). That is the well-settled standard of review where, as here, an entity is granted "discretionary authority and responsibility to interpret, construe and make determination under the applicable coverage option." (*CVS* at 4, quoting the agreement between NSLIJ and Pharmacare at 74).

■ While plaintiff has produced evidence to support its contention that Barr's tamoxifen was a generic, the record also contains evidence (described in the prior opinion) supporting the opposite conclusion. A decision will not be overturned under the arbitrary and capricious standard where there is "some evidence" to support it. *Superintendent v. Hill,* 472 U.S. 445, 454, 105 S.Ct. 2768, 2773, 86 L.Ed.2d 356 (1985). Since there is "some evidence" to support Pharmacare's decision, it stands.[2]

To the extent that plaintiff's papers can be read to argue manifest injustice on this point, I reject that theory as well. Given the conflicting evidence, it is far from clear that Barr's tamoxifen is "legally" a generic drug.

In deciding this motion, I have considered the evidence submitted by plaintiff. Even if the standard of error was *de novo,* I would find the evidence unpersuasive. Plaintiff cites to a July 2, 2004 Food and Drug Administration response letter ("FDA Response") and to a July 2002 Federal Trade Commission study ("FTC Study"), neither of which has any direct bearing on the issues of this case *or* whether Barr's tamoxifen is "legally" a generic drug. (*See* Oct. 26 Letter; Oct. 13 Letter.)[3]

The FDA Response addresses citizens' petitions filed by Mylan and Teva Pharmaceuticals, and it focuses on whether a New Drug Application ("NDA") holder can market its approved product at a price that competes with that charged by an Abbreviated New Drug Application ("ANDA") holder who is the first generic manufacturer to enter the market. It does not address the question of whether any drug is "legally" a generic, let alone Barr's tamoxifen specifically. Similarly, the FTC Study addresses the effect of settlement agreements between NDA and ANDA holders on the availability of generics in the market. This has no bearing on whether Barr's tamoxifen is "legally" a generic drug.

---

2. Contrary to plaintiff's assertions, I did not resolve conflicts in the evidence against plaintiff, nor did I overlook the testimony of Gary Shramek. (Pl.Mem. p. 20). I simply held that there was "some evidence" to support Pharmacare's decision.

3. Food and Drug Administration and Federal Trade Commission publications do not even agree on what exactly constitutes a generic drug, focusing on what a generic drug *must contain and do,* but not what differentiates it from a brand drug. *See, e.g.,* "Drugs@FDA Glossary of Terms," available at *www.fda.gov/cder/drugsatfda/glossary.htm* (defining "generic drug" as "the same as a brand name drug in dosage, safety, strength …[and containing] the identical amounts of the same active ingredient(s) as the brand… drug);" "Generic Drugs: Saving Money at the Pharmacy," available at *www.ftc.gov/bcp/conline/pubs/health/generic.htm* (noting that "[a] generic drug is called by its chem[ ]ical name… [and] the products have the same ingredients… That is, it must have the same active ingredients, strength and dosage form…and have the same medical effect.").

Plaintiff's sources only emphasize that "generic" drugs, which are almost always cheaper than brand drugs, are not usually available before the expiration of the patent on the "brand" drug. The FDA Response and the FTC Study focus on special arrangements that some companies make to market another version of a "brand" drug before the expiration of a patent. Whether that version is called an "authorized generic" for purposes of the Study is irrelevant here. Neither the FDA Response nor the FTC Study purports to classify Barr's tamoxifen as a "generic" drug. In fact, the FDA Response states quite clearly that the FDA does not regulate drug prices, nor does it involve itself with the marketing agreements entered into by pharmaceutical companies—its primary concern is public health and safety. (FDA Response pp. 1–5.) Therefore, plaintiff's sources would not persuade me that it was manifest error to allow Pharmacare to classify Barr's tamoxifen as a "brand" drug during the class period in CVS (which was also a period during which AstraZeneca's patent for the competing "brand" drug Nolvadex® was in force). In other words, defendant classified Barr's tamoxifen as a "brand" drug during a period when normally only a "brand" drug would be available anyway.

Finally, neither the FDA Response nor the FTC Study specifically articulates any "generic" classification of Barr's tamoxifen whatsoever. Thus, there is no agency decision requiring deference in this case. *Cf. Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984).

**Conclusion**

For the foregoing reasons, the *Medco* decision is modified to dismiss the one remaining cause of action for equitable relief, but is otherwise unchanged, and the *CVS* decision stands, unmodified. Both cases are closed.

**Instructions to the Clerk of the Court**

The Clerk of the Court is instructed to: (1) enter judgment for the defendant in *Medco* and close that file; and (2) enter judgment for the defendant in *CVS* and close that file. There are no outstanding motions on either case at this time.

This constitutes the decision and order of the court.