**Susan SCHNUR, Plaintiff,**

v.

**CTC COMMUNICATIONS CORP. GROUP DISABILITY PLAN and Continental Casualty Company, Defendants.**

**No. 05 Civ. 3297(RJS).**

United States District Court, S.D. New York.

Oct. 10, 2008.

Harry Julius Binder, Binder and Binder, New York, NY, Patrick Henry Busse, Binder & Binder, P.C.(Suffolk), Ronkonkoma, NY, for Schnur, Plaintiff.

Robert Emmet Crotty, Megan Rose Brillault, Kelley Drye & Warren, LLP (NY), New York City, Shannon M. Jandorf, Samantha C. Halem, Marshall Law Group, Wellesley, MA, Mary Louise Marshall, M. Douglas Haywoode, Brooklyn, NY, for CTC Communications Corp. Group Disability Plan, Defendant.

Michael H. Bernstein, John T Seybert, Sedgwick, Detert, Moran & Arnold, LLP, New York City, for Continental Cas. Co.

MEMORANDUM AND ORDER

RICHARD J. SULLIVAN, District Judge.

Plaintiff Susan Schnur brings this action to recover long-term disability benefits under the Employment Retirement Security Income Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.* Specifically, Plaintiff alleges that she was wrongfully denied benefits by the CTC Communications Corporation Group Disability Plan ("Defendant LTD Plan"), which was funded by her former employer, CTC Communications Corporation ("CTC Corp."), through an insurance policy issued by Defendant Continental Casualty Company ("Continental"). Before the Court is Defendant LTD Plan's motion to dismiss and Continental's motion for summary judgment. For the reasons that follow, Defendant LTD Plan's motion is DENIED and Continental's motion is GRANTED

## I. BACKGROUND

### A. Facts [1]

Plaintiff worked for CTC Corp. as a Technical Service Coordinator between May 2000 and December 2001. (Continental's 56.1 ¶¶ 1, 8.) As a benefit of her employment, Schnur was covered under the terms of Defendant LTD Plan, known as the "CTC Communications Corp. Group Disability Plan." (*See id.* ¶¶ 2, 4; *see also* Kelly Aff. ¶ 2.) Defendant LTD Plan was covered by ERISA and fully insured by Continental under policy number SR–

---

[1]. The following facts are taken from the pleadings, the Local Rule 56.1 statements submitted by Schnur and Continental, and affidavits and exhibits submitted by the parties. Where only one party's Rule 56.1 statement is cited, the opposing parties do not dispute that fact or have offered no admissible evidence to controvert that fact.

83091448. (Continental's 56.1 ¶ 3; Kelly Aff. Ex. A ¶¶ 1–2.)

### 1. CTC Communications Corp. Group Disability Plan

Although the actual terms of the Defendant LTD Plan are not in the record (*see* Transcript of June 2, 2008 Oral Argument ("Tr.") at 4), the Summary Plan Description ("SPD") issued by Continental states that the Defendant LTD Plan provides a monthly benefit to employees who become disabled, based on a fixed percentage of the employee's pre-disability compensation. (Kelly Aff. Ex. A at 3, SS 0007.) The SPD names CTC Corp. as the Plan Administrator, but Continental played a significant role in benefits determinations. (Continental's 56.1 ¶¶ 5, 6; *see also* Kelly Aff. ¶ 1 & Ex. A at 18, SS 0045.)

The SPD contains two alternative definitions of "disability" or "disabled": the "Occupation Qualifier" and the "Earnings Qualifier." (Pl.'s 56.1 ¶ 26.) Under the "Occupation Qualifier," " '[d]isability' means that during the Elimination Period and the following 24 months, injury or sickness causes physical or mental impairment to such a degree of severity" that the employee is "[c]ontinuously unable to perform the Material and Substantial Duties of [his or her] regular occupation" and "[n]ot working for wages in any occupation for which [the employee is or becomes] qualified by education, training or experience." (*Id.*) The "Earnings Qualifier" states that an employee is disabled "if an injury or sickness is causing physical or mental impairment to such a degree of severity that [the employee is] unable to earn more than 80% of [his or her] monthly earnings in any occupation for which [he or she is] qualified by education, training, [or] experience." (*Id.*)

### 2. Schnur's Application For Benefits

In approximately August 20001, Plaintiff began experiencing symptoms of Lyme disease, fibromyalgia, and chronic fatigue syndrome. (Continental's 56.1 ¶ 7; *see also* Pl.'s 56.1 ¶ 27.) She alleges that these symptoms and their treatments caused her to become "totally disabled" under the terms of the SPD and "forced" her to stop working at CTC Corp. after December 1, 2001. (Pl.'s 56.1 ¶¶ 27–31.)

On approximately March 11, 2002, Plaintiff submitted a claim form and Attending Physician's statement in accordance with the procedures described in the SPD. (Continental's 56.1 ¶ 9; Second Am. Compl. ¶ 42.) By letter dated July 2, 2002, Continental informed Schnur that her claim for long-term disability benefits was denied, reasoning that "we do not see any evidence in the current medical records to establish that your condition imposes a physical or psychological impairment that would preclude you from engaging in the substantial and material duties of your regular occupation on a sustained basis." (Second Am. Compl. ¶¶ 43–44; *see also* Continental's 56.1 ¶ 11.)

### 3. Plaintiff's Appeal and Social Security Administration Claim

Schnur appealed the benefits decision by letter dated August 23, 2002. (Continental's 56.1 ¶ 12.) Continental denied the appeal in a May 2, 2003 letter stating that it had "concluded there is no evidence that establishes a medical basis to support a condition(s) that would have precluded your client from performing her occupational work activity as of 11/27/01 and continuing." (Second Am. Compl. ¶¶ 50–51; *see also* Continental's 56.1 ¶ 14.)

Plaintiff also alleges that, on or about May 22, 2003, the Social Security Administration ("SSA") determined that she was "disabled" under the Social Security Act, which defines "disability" as the inability "to engage in any substantial gainful activity." (Second Am. Compl. ¶ 52 (citing 42

U.S.C. § 416(i)); *see also* Continental's 56.1 ¶ 10.) Schnur's initial monthly SSA benefits were $1,333 per month, and she continues to receive benefits. (Second Am. Compl. ¶ 23.)

### 4. The CTC Bankruptcy Proceedings

On October 11, 2002, CTC Communications Group—along with related debtor entities that included CTC Corp.—filed for bankruptcy under Chapter 11 of the United States Bankruptcy Code.[2] (*See* Continental's 56.1 ¶ 13; *see* Bernstein Aff. ¶ 7.) Following the bankruptcy proceedings, the resulting "Reorganized CTC," including "Reorganized CTC Corp.," was structured according to a Second Amended Joint Plan of Reorganization ("Reorganization Plan"). (Bernstein Aff. Ex. 6 at Art. V, § A, ¶ 1, at 27.) The Reorganization Plan was confirmed by the Bankruptcy Court on December 15, 2003 pursuant to its "Findings of Fact, Conclusions of Law and Order Confirming Debtors' Second Amended Joint Plan of Reorganization" ("Confirmation Order"). (Continental's 56.1 ¶ 15; *see also* Bernstein Aff. Ex. 5.)

Pursuant to the Reorganization Plan, "Reorganized CTC Corp." stated that it "intend[ed] to continue (or continue as modified or replaced) the Debtors' existing benefit policies, plans and agreements identified on Exhibit F." (Bernstein Aff. Ex. 6 at Art. V, § D, ¶ 1, at 32.) Exhibit F of the Reorganization Plan states that "[t]he Reorganized Debtors will have the following benefit plans . . . in effect following the Effective Date [December 15, 2003] . . ." (*Id.* Ex. 7.) The only long-term disability plan listed in the Exhibit is "Guardian Long–Term Disability, max of taxable $6,000 per month based on base salary." (*Id.*) A copy of this Guardian Long–Term Disability plan is not before the Court.

The Bankruptcy Court's Confirmation Order states that "[t]he provisions of the Plan and this Confirmation Order shall be . . . binding on the Debtors, all holders of Claims and interests . . ., and any other person or entity affected thereby . . . ." (*Id.* Ex. 5 ¶ 8, at 10.) Further,

> [e]xcept as otherwise expressly provided in the Plan, this Confirmation Order, or any agreement entered into in connection with the Plan . . . upon the occurrence of the Effective Date, the Debtors shall be discharged and released, effective immediately, from any Claim . . ., any "debt" . . ., and any Interest . . . against the Debtors or the Reorganized Debtors that arose from any . . . obligation of the Debtors incurred before the Confirmation date . . . .

(*Id.* Ex. 5 ¶ 13, at 11–12.)

### B. Procedural History

On March 28, 2005, Schnur filed the complaint in this action, naming as defendants the "CTC Communications Corp. Group Disability Plan" and "CTC Communications Corp. as Plan Administrator." (*See* Compl. ¶¶ 6, 14–15.) Schnur filed an Amended Complaint on June 24, 2005, this time naming "CTC Communications Corp. Group Disability Plan" as the sole defendant. (*See* Am. Compl. ¶¶ 6, 14.) Defendant LTD Plan answered on July 11, 2005.

Schnur filed the Second Amended Complaint on August 8, 2005, adding Continental as an additional defendant. (*See* Second Am. Compl. ¶¶ 6, 15.) Defendant LTD Plan answered the Amended Complaint on August 30, 2005, asserting as an affirmative defense that "[t]he obligations of the Group Plan (which was in effect during Plaintiff's employment) were dis-

---

**2.** The named debtors in the proceedings were CTC Communications Group, Inc., CTC Corp., CTC Communications Leasing Corp., and CTC Communications of Virginia. (*See* Bernstein Aff. Ex. 6 at Art. I, § A, ¶¶ 45, 46, 48, 50, 54.)

charged in bankruptcy." (LTD Plan Answer at 9.) Continental answered on September 12, 2005. Defendant LTD Plan's motion to dismiss and Continental's motion for summary judgment were both filed on March 31, 2006. On September 4, 2007, the case was reassigned to the undersigned.

## II. DISCUSSION

### A. Legal Standard

The standards for summary judgment are well settled. The moving party bears the burden of showing that he or she is entitled to summary judgment. *See Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir.2005). Pursuant to Rule 56(c), summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c); *Matican v. City of New York*, 524 F.3d 151, 154 (2d Cir.2008). "A dispute about a 'genuine issue' exists for summary judgment purposes where the evidence is such that a reasonable jury could decide in the non-movant's favor." *Beyer v. County of Nassau*, 524 F.3d 160, 163 (2d Cir.2008) (quoting *Guilbert v. Gardner*, 480 F.3d 140, 145 (2d Cir.2007)); *see also Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (summary judgment is unwarranted if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

### B. Defendant LTD Plan's Motion

█ Despite being styled as a "motion to dismiss," Defendant LTD Plan has referred to documents outside the pleadings in its motion papers. (*See* LTD Plan Mem. at 3 (citing declarations submitted by Mary Louise Marshall and Donna A. Heuchling).) Consequently, the Court has discretion to convert the motion to one for summary judgment. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 154 (2d Cir.2002). Although Defendant LTD Plan did not submit a statement of undisputed material facts pursuant to Local Rule 56.1, its submission of the Marshall and Heuchling Declarations invited the Court to look outside the pleadings to decide its motion. *See Gurary v. Winehouse*, 190 F.3d 37, 43 (2d Cir.1999). Moreover, Plaintiff is not prejudiced by converting the motion to one for summary judgment because, although she objected to the form of Defendant LTD Plan's motion, the majority of her opposition to Defendant LTD Plan's submission is devoted to arguing in the alternative that relief is inappropriate under Rule 56 as well. (*See* Pl.'s Opp'n at 5–14.) The Court therefore finds that consideration of the material external to the pleadings that was submitted by Defendant LTD Plan "will significantly facilitate resolution of the dispute." *Panigeon v. Alliance Navigation Line, Inc.*, No. 96 Civ. 8350(SAS), 1997 WL 473385, at *4 (S.D.N.Y. Aug.19, 1997). Accordingly, the Court hereby converts Defendant LTD Plan's motion to dismiss to one for summary judgment.

In its motion, Defendant LTD Plan makes three main arguments. First, it asserts that Plaintiff sued the wrong party, arguing that she improperly named the long-term disability plan of Reorganized CTC Corp., which emerged after the Chapter 11 reorganization proceedings. (LTD Plan Mem. at 3.) Second, and relatedly, Defendant LTD Plan asserts that Continental alone is liable to Plaintiff because the "Complaint alleges no wrongdoing by the CTC Plan." (*Id.* at 5.) Finally, Defendant LTD Plan argues that, even if Plaintiff sued the long-term disability plan that covered her during her employment at CTC Corp., CTC's Chapter 11 reorgani-

zation discharged any liability it may have had to her. (*Id.* at 4–5.)

Plaintiff responds, in pertinent part, that these arguments misstate the actual defendant named in her Second Amended Complaint and that Defendant LTD Plan is a proper party to this action to recover benefits under ERISA. (Pl.'s Opp'n at 8–10.) She also argues that Defendant LTD Plan was not a debtor in the CTC Chapter 11 reorganization (*id.* at 7), and that she did not receive appropriate notice of those proceedings (*id.* at 24).

For the reasons set forth below, the Court finds that Defendant LTD Plan—CTC Communications Corp. Group Disability Plan—is properly named as a defendant in this action, and that disputed issues of material fact remain regarding the status of Defendant LTD Plan following CTC's bankruptcy reorganization. Therefore, Defendant LTD Plan's motion is denied.

### 1. CTC Communications Corp. Group Disability Plan Is Properly Named As A Defendant

■ Defendant LTD Plan's first two arguments relate to whether or not it is a proper party to this action. The Court finds that Plaintiff properly named the long-term disability plan that covered her while she was an employee of CTC Corp. between May 2000 and December 2001. Accordingly, Defendant LTD Plan's motion on these grounds is denied.

#### i. Law

The "beneficiary" of a plan covered by ERISA may sue "to recover benefits due ... under the terms of [the] plan" or "to enforce ... rights under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). "In a recovery of benefits claim, only the plan and the administrators and trustees of the plan in their capacity as such may be held liable." *Leonelli v. Pennwalt Corp.*, 887 F.2d 1195, 1199 (2d Cir.1989) (citing 29 U.S.C. § 1132(d)(2)).

" '[A]n employee benefit plan may sue or be sued ... as an entity,' and ... '[a]ny money judgment ... against an employee benefit plan shall be enforceable only against the plan as an entity.' " *Chapman v. ChoiceCare Long Island Term Disability Plan*, 288 F.3d 506, 509 (2d Cir.2002) (quoting 29 U.S.C. § 1132(d)(1), (2)).

#### ii. Analysis

Plaintiff's Second Amended Complaint names "CTC Communications Corp. Group Disability Plan" as a defendant. Defendant LTD Plan construes Plaintiff's amended pleading as bringing a claim against the long-term disability plan of "Reorganized CTC." (*See* LTD Plan Mem. at 2.) On that basis, Defendant LTD Plan suggests that it is not a proper party because it did not yet exist. (*Id.* at 4.) In support of this argument, Defendant LTD Plan submitted a two-page declaration signed by Donna A. Heuchling, the Interim Vice President of Human Resources for CTC Corporation, Inc. ("Heuchling Dec."), Heuchling's Declaration contains no attachments or exhibits, and simply states that:

> CTC maintains a long-term disability plan for its employees ("the CTC Plan"). The sole asset of the plan is an insurance policy with the Hartford insurance company. That policy only covers individuals who were employed by CTC during the effective dates of the policy.
>
> Plaintiff was never employed by CTC. Because she was not employed by CTC, she is not eligible for benefits under the CTC Plan.

(Heuchling Dec. ¶¶ 3–4.) Notably absent from the record are the insurance policy referenced by Heuchling and the long-term disability plan she describes. These conclusory statements without supporting

documentation are insufficient to entitle Defendant LTD Plan to summary judgment. *See Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 307 (2d Cir.2003).

Moreover, the record refutes Defendant's argument that Plaintiff has sued the wrong disability plan. The SPD that applied to Plaintiff during her employment at CTC Corp. designates the "Name of the Plan" as "CTC Communications Corp. Group Disability Plan," which is the precise name that appears on the Second Amended Complaint. (Kelly Aff. Ex. A at 18, SS 0045.) Plaintiff has not brought a claim against "a new, separate entity" or alleged that a post-Chapter 11 entity is "somehow responsible for the obligations of the Old Corp. Plan." (LTD Plan Mem. at 3.) Indeed, as discussed *infra*, the name and status of Reorganized CTC's long-term disability plan is unclear from the record. Thus, the Court rejects Defendant LTD Plan's argument that Plaintiff has brought suit against the wrong long-term disability plan.[3]

Next, Defendant LTD Plan argues that, because Plaintiff only alleges wrongdoing by the Plan's insurer, Continental is the only proper defendant in this action. This argument is deficient in two respects. First, Plaintiff *does* make allegations against Defendant LTD Plan. For example, Plaintiff alleges that "[t]he Plan Administrator and the LTD Plan incorrectly allowed [Continental] to make decisions, and as such, failed in its duty to adequately monitor and correct the carrier's bad faith handling of this claim." (Second Am. Compl. ¶ 59; *see also id.* ¶ 63.) Second, according to clear authority from this Circuit, Defendant LTD Plan, which covered Plaintiff during the period of her employment at CTC Corp., is unquestionably a proper party in her recovery of benefits claim. *See, e.g., Chapman*, 288 F.3d at 509; *Leonelli*, 887 F.2d at 1199. Accordingly, Defendant LTD Plan's first two arguments are without merit; Plaintiff has properly named it as a party to this action.

### 2. The Present Status of CTC Communications Corp. Group Disability Plan

■ Defendant LTD Plan next argues that CTC Corp.'s obligations were discharged in bankruptcy and that "[i]f Plaintiff has a claim against [CTC Corp.] or its benefit plans, she . . . should have filed them with the Bankruptcy Court." (LTD Plan Mem. at 5.) Plaintiff responds, in essence, that CTC Corp.'s disability plan survived CTC's Chapter 11 reorganization. (*See* Pl.'s Opp'n at 7.) The Court finds that disputed issues of material fact remain with respect to the disposition and current status of Defendant LTD Plan following the confirmation of CTC's Chapter 11 reorganization. Accordingly, Defendant LTD Plan's motion on these grounds is denied.

#### i. Law

The issue before the Court requires consideration of both bankruptcy law and ERISA. Under the Bankruptcy Code, "the confirmation of a debtor's plan of reorganization discharges 'any debt that arose before the date of such confirmation.'" *In re Worldcom, Inc.*, 339 B.R. 836, 840 (S.D.N.Y.2006). A "debt" under

---

**3.** Although Defendant LTD Plan contends that it has "answered Plaintiff's Complaint and has filed this Motion solely to protects its interests, without acknowledging that it is a property party in this action" (*id.* at 3), the Court notes that CTC Corp. accepted service as an agent of Defendant LTD Plan. Additionally, Defendant LTD Plan has submitted a responsive pleading, filed the instant motion, and appeared for oral argument in this case, all without raising objections to this Court's exercise of personal or subject matter jurisdiction under ERISA.

the Bankruptcy Code includes "liability on a claim," 11 U.S.C. § 101(12), and "claim" is defined broadly to include almost any "right to payment," *id.* at § 101(4)(A). *See Pennsylvania Dept. of Pub. Welfare v. Davenport,* 495 U.S. 552, 557–58, 110 S.Ct. 2126, 109 L.Ed.2d 588 (1990); *In re Manville Forest Prods. Corp.,* 209 F.3d 125, 128 (2d Cir.2000). Once confirmed by the bankruptcy court, a reorganization plan "bind[s] the debtor ... and any creditor ... whether or not the claim or interest of such creditor ... is impaired under the plan and whether or not such creditor ... has accepted the plan." 11 U.S.C. § 1141(a).

■ In connection with these basic bankruptcy principles, the Court is mindful that "ERISA does not create any substantive entitlement to employer-provided health benefits or any other kind of welfare benefits. Employers or other plan sponsors are generally free under ERISA, for any reason at any time, to adopt, modify, or terminate welfare plans." *See Curtiss–Wright Corp. v. Schoonejongen,* 514 U.S. 73, 77, 115 S.Ct. 1223, 131 L.Ed.2d 94 (1995). The Act does require, however, that statutory "welfare plans" include "a procedure for amending such plan, and for identifying the persons who have authority to amend the plan." 29 U.S.C. § 1102(b)(3). Welfare plans under ERISA include those that are "established ... for the purpose of providing for ... beneficiaries, through the purchase of insurance or otherwise, ... disability [benefits] ...." *Id.* § 1002(1).

### ii. Analysis

Defendant LTD Plan asserts that it ceased to exist once the Bankruptcy Court confirmed CTC's Reorganization Plan on December 15, 2003, and that any liabilities of the Defendant LTD Plan or CTC Corp.—including Plaintiffs claim—were discharged in those Chapter 11 proceedings. Defendant LTD Plan points to the Bankruptcy Court's Confirmation Order, which states that: "the Debtors shall be ... released, effective immediately, from any Claim ... against the Debtors ... that arose from any ... obligation of the Debtors incurred before the Confirmation Date." (Bernstein Aff. Ex. 5. ¶ 13, at 11–12.) While both Defendants argue that Plaintiff's claim for benefits must be classified as a "pre-petition claim" that was "discharged and released" by the Bankruptcy Court, Plaintiff's claim is against Defendant LTD Plan and not CTC Corp. The Confirmation Order and the underlying Reorganization Plan make clear that Defendant LTD Plan was not a named debtor in the bankruptcy proceedings. (*See* Bernstein Aff. Ex. 5; *see also id.* Ex. 6 at Art. I, § A, ¶ 54, at 7 (defining "Debtors" under the Reorganization Plan).) Defendant LTD Plan is not one of the "Debtors" whose debts were "discharged and released" by the language above. Therefore, Defendant LTD Plan only ceased to exist insofar as it was treated as an asset or liability of CTC that was addressed directly by the Bankruptcy Court.

As to the effect of the bankruptcy reorganization on CTC Corp.'s benefits plan, Defendant LTD Plan draws the Court's attention to the following language: "[f]rom and after the Effective Date, Reorganized CTC intends to continue (or continue as modified or replaced) the Debtors' existing employee benefit policies, plans and agreements identified on Exhibit F." (Bernstein Aff. Ex. 6 at Art. V, § D, ¶ 1, at 32.) Defendant LTD Plan points out that the only long-term disability plan listed on Exhibit F is listed as "Guardian Long–Term Disability." (*Id.* Ex. 7.) Based on these documents, Defendant LTD Plan asserts that its omission from Exhibit F means that it ceased to

exist by operation of law on the effective date of the Bankruptcy Court's Confirmation Order, Defendant LTD Plan argues further that, because it no longer existed after the reorganization was confirmed on December 13, 2003, it cannot be liable to Plaintiff in an action commenced in March 2005.

This language alone, however, is insufficient to warrant summary judgment for Defendant LTD Plan because key documents are missing from the record. For example, the Court does not have before it the terms of the actual long-term disability plan that covered Plaintiff while she worked at CTC Corp. (*See* Tr. at 4 ("[CTC] is not aware of any plan. . . . [CTC] has not been able to find a plan.").) Therefore, disputed and unresolved factual issues remain regarding whether Defendant LTD Plan had termination procedures in place as required by 29 U.S.C. § 1102(b)(3), whether CTC attempted to terminate Defendant LTD Plan in connection with the Chapter 11 proceedings, and, if so, whether those termination procedures were followed. (*See* Pl.'s 56.1 ¶¶ 15–17.) Additionally, even assuming that the "Guardian" plan referenced in Exhibit F of CTC's bankruptcy Reorganization Plan replaced Defendant LTD Plan, the terms of the Guardian Long–Term Disability Plan are not before the Court. Indeed, at oral argument on these motions, counsel for Defendant LTD Plan acknowledged that she had not even read the insurance contract underlying the Guardian Plan. (Tr. at 5–6.) Counsel conceded, however, that if Plaintiff had been *granted* benefits under the terms of Defendant LTD Plan, then payments would be due to her under the Plan from its insurer, Continental, irrespective of the bankruptcy reorganization. (*See id.* at 9.) Thus, factual issues remain as to the effect of the bankruptcy on Defendant LTD Plan and the Guardian Plan's treatment, if any, of that plan.

In support of the proposition that the Reorganization Plan and Confirmation Order discharged any obligations it owed to Plaintiff, Defendant LTD Plan relies solely on *Arevalo v. Herman,* No. 01 Civ. 512(DWD), 2002 U.S. Dist. LEXIS 7076 (E.D.Va. Apr. 12, 2002). *Arevalo,* however, is inapposite. There, plaintiffs brought a claim for breach of fiduciary duty—not recovery of benefits—seeking to hold two officers of their former employer personally liable for the value of unpaid benefits allegedly owed by the employer. *Id.* at *1. Plaintiffs' filed the claim after the employer was forced into bankruptcy and stopped paying their benefits. *Id.* at *3. It was undisputed, and supported by the record, that the disability plan that covered the *Arevalo* plaintiffs was terminated "as a direct result of the court-ordered liquidation of the [employer]." *Id.* at *27. The Court made the following factual findings in connection with its decision:

> Although the Company encountered difficult financial circumstances that eventually forced it into bankruptcy, it never failed to make required contributions to the Plan or failed to reimburse the [Plan's third-party administrator] for benefit payments until the bankruptcy court ordered the Company to stop making such disbursements.
>
> [ . . . ]
>
> The Company specifically requested permission of the bankruptcy court that it be allowed to satisfy benefit claims related to healthcare expenses that had been incurred before the bankruptcy filing (pre-petition), but the court declined permission and *the Plan was formally terminated* by the court-appointed trustee appointed by the court to oversee the Company's liquidation.

*Id.* (emphasis added). Thus, unlike in this case, the record before the *Arevalo* court

included detailed information about the effect of the bankruptcy proceedings on the disability plan. It was only on the basis of that record that the court was able to find that, as Defendant LTD Plan characterizes the holding, the "[b]ankrupt employer had no liability to beneficiaries of [the bankrupt employer's] benefit plan." (LTD Plan Mem. at 5.) Accordingly, even if the facts of this case were on point with *Arevalo* and the Court were inclined to adopt its reasoning, the record is insufficient to permit the Court to do so.

Therefore, the Court finds that Defendant LTD Plan's argument, its supporting authority, and the language of the bankruptcy documents presently in the record do not establish that Defendant LTD Plan ceased to exist after the effective date of the Chapter 11 reorganization. Because Plaintiff objects to Defendants' characterization of the Reorganization Plan and Confirmation Order (*see* Pl.'s 56.1 ¶¶ 13, 15, 16, 17), disputed issues of material fact remain in this case relating to the post-Chapter 11 status of the plan. Accordingly, Defendant LTD Plan's motion for summary judgment is denied.

### C. Continental's Motion for Summary Judgment

Continental argues that Plaintiff's sole recourse in her action to recover benefits is against Defendant LTD Plan, and that its liability "is purely derivative of the CTC Plan obligations it agreed to underwrite." (Continental Mem. at 4.) Continental also argues that, because CTC Corp.'s discharge in bankruptcy "effectively terminated [P]laintiff's rights against the [Defendant LTD] Plan," any derivative claims against Defendant LTD Plan's insurer must fail as well. (*Id.* at 6.) Plaintiff responds that she has properly stated a claim against Continental as a *de facto*

administrator and fiduciary of Defendant LTD Plan. (*See* Pl.'s Opp'n at 21.)

■ The Court finds that Continental is not a proper defendant in this action, whether Plaintiff's claim is characterized as one for the recovery of benefits owed pursuant to the terms of Defendant LTD Plan or a breach of Continental's fiduciary duty to the Plan. In light of that conclusion, and because disputed issues of material fact remain in the record, the Court declines to reach Continental's bankruptcy-related argument.

### 1. Continental Is Not A Proper Defendant In An Action To Recover Benefits Owed Under Defendant LTD Plan

#### i. Law

■ "In a recovery of benefits claim, only the plan and the administrators and trustees of the plan in their capacity as such may be held liable." *Chapman,* 288 F.3d at 509–10 (quoting *Leonelli v. Pennwalt Corp.,* 887 F.2d 1195, 1199 (2d Cir. 1989)). Under ERISA, the Plan "administrator" is "the person specifically so designated by the terms of the instrument under which the plan is operated . . . ." 29 U.S.C. § 1002(16)(A)(i). "Any money judgment . . . against an employee benefit plan shall be enforceable only against the plan as an entity." *Id.* at § 1132(d)(2).

#### ii. Analysis

Continental is not Defendant LTD Plan's "administrator" under ERISA. *See* 29 U.S.C. 1002(16)(A)(i). The SPD provided by Continental expressly states that "CTC Communications Corp." is the Plan's administrator. (Kelly Aff Ex. A at 20, SS 0024.) Plaintiff concedes this point: "[i]n the case at bar, CTC [Corp., Inc.] is the Plan Administrator in the Summary Plan Description for the benefits claimed

...." (Pl.'s Opp'n at 17.)[4] While Continental apparently exercised some discretion and authority in making benefits determinations, discretion alone is not enough to meet the statutory definition of an ERISA Plan "administrator." *See Krauss v. Oxford Health Plans, Inc.*, 418 F.Supp.2d 416, 434 (S.D.N.Y.2005) ("An entity may 'administer' some elements of a covered Plan as a fiduciary without being the plan administrator."); *see also* 29 U.S.C. § 1002(21)(A) (defining an ERISA plan "fiduciary" as someone who exercises discretion in, among other things, benefits determinations). "[I]f a plan specifically designates a plan administrator, then that individual or entity is *the* plan administrator for purposes of ERISA ...." *Crocco v. Xerox Corp.*, 137 F.3d 105, 107 (2d Cir. 1998) (emphasis in original); *see also Del Greco v. CVS Corp.*, 354 F.Supp.2d 381, 384 (S.D.N.Y.2005).

Plaintiff's reliance on *Chapman v. ChoiceCare Long Island Term Disability Plan* is misplaced. In *Chapman*, the defendant plan argued that it could not be named as a defendant because the plan's insurer was contractually obligated to pay long-term disability benefits. 288 F.3d at 509. The court held that the plain terms of ERISA permit suit against the plan for the recovery of benefits, *id*, but the case says nothing about the propriety of naming the plan's insurer as a defendant. If anything, the case supports Continental's position that it is not a proper party. *See id.* ("In a recovery of benefits claim, only the plan and the administrators and trustees of the plan in their capacity as such may be held liable.") (internal quotations omitted). The holding and analysis in *Chapman* provide no authority for Plaintiff's position.

Similarly, *Nozar v. John Hancock Mut. Life Ins. Co.*, No. 89 Civ. 5496(SBC), 1990 WL 103216 (N.D.Ill. July 19, 1990), also cited and relied on by Plaintiff, is neither binding nor persuasive authority in this context. (*See* Pl.'s Opp'n at 22.) In *Nozar*, the plaintiff argued that summary judgment for the defendant insurance company was inappropriate because a fac-

---

**4.** Paragraph 5 of Continental's Rule 56.1 statement states that "[t]he CTC Plan designates CTC as the Plan Administrator." (Continental's 56.1 ¶ 5.) Plaintiff's Rule 56.1 statement, however, erroneously asserts that "[t]here is no paragraph numbered '5'" in Continental's Rule 56.1 statement. (Pl.'s 56.1 ¶ 5.) The Second Amended Complaint, however, essentially concedes that CTC was Defendant LTD Plan's administrator. (*See* Second Am. Compl. ¶¶ 8, 59.) The Court finds that these allegations, in combination with the assertion in Plaintiff's opposition papers that CTC "is the Plan Administrator" are sufficient to deem paragraph 5 of Continental's Rule 56.1 statement undisputed.

Relatedly, the Court notes that Continental's Rule 56.1 statement states that it "was the insurer and claims administrator for the Plan," (Continental's 56.1 ¶ 6 (citing Kelly Aff. Ex. A at 20–21, SS 0024–25).) Exhibit A to the Affidavit of Joyce Kelly is the SPD, which states at the pages cited by Continental that "[t]he Plan is administered by the Plan Ad-

ministrator [CTC Communications Corp.] through an insurance contract purchased from Continental ...." (Kelly Aff. Ex. A at 20, SS 0024.) The SPD states further that "[t]he Administrator and other Plan fiduciaries have discretionary authority to interpret the terms of the Plan and to determine eligibility for and entitlement to benefits in accordance with the Plan." (*Id.*) Consequently, Continental's statement that it is a "claims administrator for the Plan" simply concedes, as the Kelly affidavit and the SPD make clear, that Continental exercised "discretionary authority" over benefits decisions pursuant to the terms of the insurance policy and Defendant LTD Plan. Making such decisions *for* the Plan, without more, does not bring Continental within ERISA's statutory definition of the "administrator" *of* Defendant LTD Plan because the SPD specifically designates "CTC Communications Corp." as the "Plan Administrator." *See Crocco v. Xerox Corp.*, 137 F.3d 105, 107 (2d Cir.1998).

tual dispute remained regarding whether the insurer was the administrator of the plan. *Id.* at *3. The court summarily stated, without citation or reference to ERISA's statutory definition of "administrator," that "[a] suit to recover benefits is properly brought against the party that decides whether to grant or deny benefits." *Id.* Under *Chapman*, however, that statement is only true to the extent that the party making such decisions is "the plan and the administrators and trustees of the plan in their capacity as such." 288 F.3d at 509. Thus, the Second Circuit has not adopted Plaintiff's proposed approach to defining "administrator" based on the exercise of discretion in benefits decisions.[5]

Finally, *Penrose v. Hartford Life and Accident Insurance Co.*, does not persuade the Court that Plaintiff should be permitted to name Continental as a defendant. (*See* Pl.'s Opp'n at 11–13) (discussing *Penrose v. Hartford Life and Acc. Ins. Co.*, No. 02 Civ. 2541(JHL), 2003 WL 21801214 (N.D.Ill. Aug.4, 2003).) In *Penrose*, as here, the insurance company exercised significant discretion with respect to benefits determinations under the plan, including the processing of the plaintiff's claim and the denial of her appeal. *Id.* at *3. Hartford argued that plaintiff's recovery of benefits claim was improper because such claims may only be brought against the plan as an entity. *Id.* The court initially agreed, and it dismissed the case on the condition that "Hartford reveal the true identity of the plan." *Id.* Thus, it appears that the *Penrose* court initially agreed with the Second Circuit's interpretation of the statute, based on its presumption "that an entity known as the plan existed and could be named." *Id.*

However, after Hartford failed to identify the "plan" entity, and was apparently unable to do so, plaintiff sought vacatur of the court's dismissal and permission to reinstate Hartford as a defendant. It is only in that procedural posture that the *Penrose* court used the language on which Plaintiff now relies. The court acknowledged that it had found no authority regarding "cases [where] the identity of the plan [was] unknown to the parties. Thus, whether the general principle that the plan is the proper defendant applies to the circumstances presented here has not been addressed in any cited case." *Id.* at *3. The court stated its holding with an important qualifier: "[*a* ]*bsent any evidence that a plan entity exists*, the court finds that Hartford is a proper defendant in a claim to recover benefits under the plan." *Id.* (emphasis added). Unlike the situation in *Penrose*, where neither the plaintiff nor the insurer could identify the plan at all, Defendant LTD Plan has in fact appeared in this case and the Court has before it an SPD describing the plan's terms. To the extent there is ambiguity, it is related to the past and present status of Defendant

5. Notably, although the case has not received direct treatment from the Court of Appeals, the Seventh Circuit does not appear to have endorsed the *Nozar* court's approach. *Blickenstaff v. R.R. Donnelley & Sons Co. Short Term Disability Plan*, 378 F.3d 669, 672 n. 1, 674 (7th Cir.2004) (dismissal of recovery of benefits claim against insurer appropriate, despite insurer's role as sole claims evaluator and agent of the benefits plan, because such claims are generally appropriate only against the plan); *Jass v. Prudential Health Care Plan, Inc.*, 88 F.3d 1482, 1490 (7th Cir.1996) (nurse employed by benefits plan administrator was not proper party in a recovery of benefits claim); *see also Neuma, Inc. v. AMP, Inc.*, 259 F.3d 864, 872 n. 4 (7th Cir.2001) ("We continually have noted that 'ERISA permits suits to recover benefits only against the Plan as an entity.' ") (quoting *Jass* ). *But cf. Mein v. Carus Corp.*, 241 F.3d 581, 585 (7th Cir.2001) (employer a proper party to recovery of benefits claim, despite not being ERISA "administrator" because it was "closely intertwined" with the plan itself)

LTD Plan in light of the Chapter 11 reorganization of its named administrator, CTC Corp. Nonetheless, *Penrose* does not require that Plaintiff be permitted to name Defendant LTD Plan's insurer in her recovery of benefits claim.

■ The Court recognizes "that there is some disagreement among courts in this circuit" regarding the proper parties to a recovery of benefits claim under ERISA. *Del Greco,* 354 F.Supp.2d at 384.[6] The Court has considered these authorities and finds that the better view, consistent with the language of the statute, is that an insurer to an ERISA plan is generally not a proper defendant in a recovery of benefits claim unless it meets the statutory definition of "administrator" under the Act. *See* 29 U.S.C. § 1002(16)(A); *Chapman,* 288 F.3d at 509; *Crocco,* 137 F.3d at 107 & n. 2.

For example, in *Crocco,* the plaintiff brought a suit to recover benefits against her former employer, *Xerox,* 137 F.3d at 106. Although Xerox was not designated as an "administrator" by the plan, the district court found that it "had control, indirectly, over the administration of the plan, and hence that it could be sued for benefits." *Id.* at 107. On appeal, the Second Circuit rejected the court's decision, reasoning that past precedent "preclude[d] employer liability, as a *de facto* co-administrator, in a suit brought under § 502(a)(1)(B), where the employer has designated a plan administrator in accordance with 29 U.S.C. § 1002(16)(A)." *Id.* The *Crocco* court also cited with approval *Lee v. Burkhart,* 991 F.2d 1004 (2d Cir. 1993): "[W]e think that the reasoning—if not necessarily the holding—of *Lee* precludes employer liability, as a *de facto* co-

6. *Compare Chapman,* 288 F.3d at 509 ("In a recovery of benefits claim, only the plan and the administrators and trustees of the plan in their capacity as such may be held liable.") (quoting *Leonelli,* 887 F.2d at 1199), *Crocco v. Xerox Corp.,* 137 F.3d 105, 107 (2d Cir.1998) (rejecting plaintiff's argument that an employer acting as a *"de facto* administrator" could be named as a defendant in a benefits recovery claim when the disability plan listed a different person as its administrator), *Leonelli v. Pennwalt Corp.,* 887 F.2d 1195, 1199 (2d Cir.1989) (former employee's recovery of benefits claim improperly named employer, division head, and benefits manager because "only the plan and the administrators and trustees of the plan ... may be held liable"), *Stevenson v. Tyco Int'l (US) Inc. Supplemental Executive Ret. Plan,* No. 04 Civ. 4037(KMK), 2006 WL 2827635, at *4 (S.D.N.Y. Sept.29, 2006) ("In the Second Circuit, *'de facto'* control is irrelevant where the employer has designated a plan administrator under 29 U.S.C. § 1002(16)(A)") (citing *Crocco,* 137 F.3d at 107), *Del Greco,* 354 F.Supp.2d at 384, *and Am. Med. Ass'n v. United Healthcare Corp.,* No. 00 Civ. 2800(LMM), No. 00 Civ. 2800(LMM), 2001 WL 863561, at *5 (S.D.N.Y. July 31, 2001) ("Plaintiffs do not allege that defendants are plan administrators or trustees

... [and] *Crocco* rejects liability for benefits under § 502(a)(1)(B) for any entity other than the plan administrator or trustees"), *with Troy v. Unum Life Ins. Co. of America,* No. 03 Civ. 9975(CSH), 2006 WL 846355, at *1 (S.D.N.Y. Mar.31, 2006) ("While Unum is nominally an insurance company, if an insurance company controls the distribution of funds and decides whether or not to grant benefits under an employee benefit plan, then it can be sued as a plan administrator.") (internal quotation omitted), *Am. Med. Ass'n v. United Healthcare Corp.,* No. 00 Civ. 2800(LMM), 2003 WL 348963, at **1–2 (S.D.N.Y. Feb. 7, 2003), *Am. Med. Ass'n v. United Healthcare Corp.,* No. 00 Civ. 2800(LMM), 2002 WL 31413668, at *6 (S.D.N.Y. Oct.23, 2002) ("Insofar as any of the insurance company defendants in this action actually controlled the distribution of funds and decided whether or not to grant benefits under one of the plans, these entities may be sued as plan administrators"), *and Sheehan v. Metropolitan Life Ins. Co.,* No. 01 Civ. 9182(CSH), 2002 WL 1424592, at *2 (S.D.N.Y. June 28, 2002) ("If an insurance company controls the distribution of funds and decides whether or not to grant benefits under an employee benefit plan, then it can be sued as a plan administrator.").

administrator" in a recovery of benefits claim under ERISA. *Id.*

Unlike in *Crocco,* the party alleged to be a *"de facto* co-administrator" in this case, Continental, is the insurance provider for Defendant LTD Plan rather than the plan beneficiaries' employer. The *Crocco* court, however, emphasized that a plan's designation of an administrator precludes *"de facto* administrator" status for another entity not named as such by the plan. The distinction between an employer and an insurance company is immaterial to *Crocco* s reasoning and ERISA's definition of "administrator." *See* 29 U.S.C. § 1002(16)(A). Therefore, *Crocco* persuades the Court that, because Continental is not an "administrator" under ERISA, it is not a proper party to Plaintiff's recovery of benefits claim.

*Lee v. Burkhart* buttresses this conclusion. In *Lee,* the plaintiffs sought reimbursement for medical costs that were covered by their benefits plan but not paid after the bankruptcy of their employer. 991 F.2d at 1005–06. Prior to its Chapter 7 bankruptcy, the employer had self-funded the plaintiffs' benefits plan and exercised discretion over beneficiaries' benefits claims. *Id.* at 1005. The insurance company defendant only performed "various administrative responsibilities." *Id.* When plaintiffs' claims were denied as a result of the employer's bankruptcy, the plaintiffs sued the insurance company, alleging that it never informed them that the benefits plan was self-funded by the now-defunct employer. *Id.* The *Lee* plaintiffs claimed that the defendant insurance company had breached its fiduciary duties under 29 U.S.C. §§ 1021 and 1024, and they sought to recover benefits owed under the plan, as well as other equitable relief. 991 F.2d at 1005.

The *Lee* court noted that one "potential impediment" to the plaintiffs' claims was that "'ERISA permits suits to recover benefits only against the Plan as an entity.'" *Id.* at 1009 (quoting *Gelardi v. Pertec Computer Corp.,* 761 F.2d 1323 (9th Cir.1985)). As in *Crocco,* the court's reasoning focused on the fact that the defendant insurer was not named as the plan's administrator. *See id.* In a footnote, the court observed that: "Some courts have held that under certain circumstances a party not designated as an administrator may be liable for failing to furnish a plan description .... We disagree." *Id.* at 1009 n. 5 (citing *Rosen v. TRW, Inc.,* 979 F.2d 191 (11th Cir.1992) and *Law v. Ernst & Young,* 956 F.2d 364, 373–74 (1st Cir. 1992)). The court held that only the plan's named administrator—not the defendant insurer—had a statutory duty to notify plan beneficiaries that the plan was self-funded. In conclusion, the court found no basis in ERISA, including the recovery of benefits claim, that would permit the plaintiffs to properly recover against the insurance company. *Id.* at 1011–12; *see also Bergquist v. Aetna U.S. Healthcare,* 289 F.Supp.2d 400, 413–14 (S.D.N.Y.2003) (following *Lee* in a claim for statutory damages under 29 U.S.C. § 1132(c)(1)).

Although *Lee* involved a self-funded plan and Defendant LTD Plan was funded by Continental according to the terms of the underlying insurance policy, the distinction appears immaterial to *Lee*'s holding. The *Lee* court's unqualified reasoning put no emphasis on the self-funded nature of the bankrupt employer's plan. *See id.* at 1010 & n. 5. Nor did it focus on the insurer's limited responsibilities with respect to claims administration. *See id.* Rather, the court adhered to the language of the statute and found that the insurer was not a proper party. This reasoning suggests that Plaintiff may only bring her recovery of benefits claim against Defendant LTD Plan and its named administrator.

"ERISA contains 'six carefully integrated civil enforcement provisions' which are part of 'ERISA's interlocking, interrelated, interdependent enforcement scheme which is in turn part of a comprehensive and reticulated statute.'" *Lee,* 991 F.2d at 1011 (quoting *Russell,* 473 U.S. at 146, 105 S.Ct. 3085). The precision with which the statute was crafted requires that it be construed in accordance with the words chosen by Congress in order to give effect to its overall purpose. The Second Circuit's analysis in *Lee* and *Crocco* is entirely consistent with the plain meaning of the statutory text defining "administrator," 29 U.S.C. § 1002(16)(A)(i), ERISA's limitation of liability in actions to recover benefits to "the plan as an entity," *id.* § 1132(d)(2), and the *Chapman* court's more recent statement that "'[i]n a recovery of benefits claim, only the plan and the administrators and trustees of the plan in their capacity as such may be held liable.'" 288 F.3d at 509 (quoting *Leonelli,* 887 F.2d at 1199). On the basis of this authority, the Court finds that Continental is not a proper defendant in Plaintiff's action to recover benefits allegedly owed to her under ERISA.

### 2. Plaintiffs Breach of Fiduciary Duty Claim Against Continental

Plaintiff also alleges that Continental breached fiduciary duties under ERISA's section 502(a)(2). (*See* Second Am. Compl. ¶¶ 60–65.) Continental denied any breach of a fiduciary duty in its Answer (*see, e.g.,* Continental Answer ¶¶ 65, 67), and argues in its motion for summary judgment that Plaintiff may not pursue a claim directly against it. (Continental Mem. at 8.) The Court finds that there is no disputed issue of material fact with respect to Plaintiff's breach of fiduciary duty claim, and that

Continental is entitled to summary judgment.

### i. Law

■ Under ERISA, "a person is a fiduciary with respect to a plan to the extent ... [he or she] exercises any discretionary authority or discretionary control respecting management of such plan ...." 29 U.S.C. § 1002(21)(A) (defining "fiduciary"). Fiduciaries are held to a "prudent man standard," under which they are required to, *inter alia,* "discharge [their] duties with respect to a plan solely in the interest of the participants and beneficiaries ...." 29 U.S.C. § 1104(a)(1). "The principal statutory duties imposed on fiduciaries by [ERISA] 'relate to the proper management, administration, and investment of fund assets,' with an eye toward ensuring that 'the benefits authorized by the plan' are ultimately paid to participants and beneficiaries." *LaRue v. DeWolff, Boberg & Assocs., Inc.,* — U.S. —, —, 128 S.Ct. 1020, 1024, 169 L.Ed.2d 847 (2008) (quoting *Massachusetts Mut. Life Ins. Co. v. Russell,* 473 U.S. 134, 142, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985)). "[T]he text of § 409(a) characterizes the relevant fiduciary relationship as one 'with respect to a plan,' and repeatedly identifies the 'plan' as the victim of any fiduciary breach and the recipient of any relief." *Russell,* 473 U.S. at 140, 105 S.Ct. 3085.

### ii. Analysis

Continental concedes that it is a fiduciary of Defendant LTD Plan. (*See* Continental Answer ¶¶ 65, 67; *see also* Continental's 56.1 ¶ 6; Kelly Aff. Ex. A at 20–21, SS 0024–25). However, as a fiduciary, Continental owes duties to Defendant LTD Plan "as a whole," *not* to the Plan's beneficiaries as individuals. *Russell,* 473 U.S. at 140, 105 S.Ct. 3085.[7] As a beneficiary of De-

---

**7.** In *LaRue,* the Supreme Court distinguished *Russell* on the basis that, whereas *Russell* involved a "defined benefit plan," the plan in *LaRue* was a "defined contribution plan."

fendant LTD Plan, Plaintiff may be entitled to bring suit to enforce fiduciary duties owed *to the Plan* and its beneficiaries as a group, but any appropriate monetary relief is owed to the Plan, not Plaintiff as an individual. *See LaRue,* 128 S.Ct. at 1024; *see also McManus v. Gitano Group, Inc.,* 851 F.Supp. 79, 82 n. 4 (E.D.N.Y. 1994) ("[B]ecause plaintiff seeks benefits for himself, he does not seek any relief authorized for breach of fiduciary duty under § 1132(a)(2).").

In the instant case, Plaintiff seeks damages resulting from Continental's alleged breach, payable to herself. (Second Am. Compl. ¶ 67(b).) However, claims for damages payable directly to the plan beneficiary must be sought under 29 U.S.C. 1132(a)(1)(B), and not on a breach of fiduciary duty theory. *See Russell,* 473 U.S. at 140, 105 S.Ct. 3085; *Crocco,* 137 F.3d at 107 n. 2. Accordingly, Plaintiff's claim for a breach of fiduciary duty by Continental must be dismissed as well. Therefore, summary judgment is hereby granted in favor of Continental.

### III. Conclusion

For the reasons set forth above, Defendant LTD Plan's motion is DENIED and Continental's motion for summary judgment is GRANTED. The Clerk of the Court is respectfully directed to terminate the motions docketed as document numbers 24 and 30.

SO ORDERED.

---

128 S.Ct. at 1024. Defendant LTD Plan in this case is a "defined benefit plan" of the type discussed in *Russell* because "it paid a fixed benefit based on a percentage of the [Plaintiffs] salary ...." *Id.* Therefore, it is *Russell*'s reasoning with respect to ERISA's fiduciary duties that controls. *See id.* (discussing the two types of plans).